James E. ELLIS, Gerald Booher, Mark Tiller, Richard Staszak Ani Weaver, Jack O'Brien and Joshua Dent, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

EDWARD D. JONES & CO., L.P. and Does 1 through 10, inclusive, Defendants.

Civil No. 06–66.

United States District Court, W.D. Pennsylvania.

Dec. 18, 2007.

A. Hoyt Rowell, Daniel O. Myers, Richardson, Patrick, Westbrook & Brickman, Mt. Pleasant, SC, Gary F. Lynch, Carlson Lynch Ltd., New Castle, PA, R. Bruce Carlson, Carlson Lynch, Sewickley, PA, Alfred G. Yates, Jr., Law Offices of Alfred G. Yates, Jr., Domenic A. Bellisario, Pittsburgh, PA, Edward W. Ciolko, Schiffrin & Barroway, Gerald D. Wells, III, Joseph H. Meltzer, Schiffrin, Barroway, Topaz & Kessler, Radnor, PA, Steven D. Bell, Steven D. Bell Co., LPA, Brecksville, OH, Charles Joseph, Joseph & Herzfeld, New York, NY, Jeffrey R. Sadlowski, Steve D. Bell Co., Akron, OH, Clyde H. Charlton, Kevin R. Allen, Scott Edward Cole, Scott Cole & Associates, Oakland, CA, for Plaintiffs.

Amy L. Blaisdell, David M. Harris, Dennis G. Collins, Timothy M. Huskey, Greensfelder, Hemer & Gale, PC, St. Louis, MO, Ronald P. Carnevali, Jr., Michael J. Parrish, Jr., Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, for Defendants.

## MEMORANDUM OPINION AND ORDER

KIM R. GIBSON, District Judge.

## I. SUMMARY

### 1. History

This case is before the Court as a consolidated class action seeking recovery of overtime benefits which Plaintiffs claim are owed to all securities brokers who worked for Defendant[1] during the various class periods. *See* Document No. 77, p. 42; Document No. 80–2 ¶¶ 8–13. On March 16, 2006, Plaintiff Ellis filed suit against Defendant in this district, claiming diversity jurisdiction under 28 U.S.C. § 1332(d)(2)(A) and seeking overtime compensation pursuant to Pennsylvania state wage and hour laws on behalf of himself and other current and former employees of Defendant in that state. Document No. 1; Document No. 80 p. 1. On March 31, 2006, Plaintiff Booher filed suit against Defendant in the United States District Court for the Central District of California, seeking overtime compensation pursuant to federal and state wage and hour laws on behalf of himself and others; the *Booher* complaint was subsequently amended to remove the California state law claims and add Plaintiffs Tiller and Staszak. Document No. 77 p. 7; Document No. 80, pp. 1–

---

[1]. The "DOES" in the caption have received short shrift in the parties' submissions, although they are allegedly "officer[s], director[s], employee[s], agent[s], representative[s], alter ego[s], or co-conspirator[s] of each of the other defendants...." Document No. 80–2 ¶ 7; *see also* Document No. 80 pp. 1–4. They are unidentified in the Second Consolidated Amended Complaint, Document No. 80–2 ¶ 70, and seem destined to remain so, since there is no indication from the Parties that further discovery is planned. In any event, it is "Edward Jones" which, if the Court approves the Settlement, will "deposit the Settlement Fund into the Settlement Account," Document No. 77 p. 14, and it is to Edward D. Jones & Co., L.P., that the Court will refer when it uses the term "Defendant."

2. *Booher* was transferred to this Court on August 2, 2006. *See* 2:06–cv–1028 Document No. 44. *But see* Document No. 80,[2] p. 2 (claiming the case was transferred on July 20, 2006). On September 25, 2006, this Court consolidated the *Booher* and *Ellis* cases at docket number 3:06–cv–66. Document No. 20; Document No. 80 p. 2.

On November 27, 2006 Plaintiff Weaver brought suit against Defendant in the Court of Common Pleas of Montgomery County, Ohio, seeking overtime compensation under Ohio's wage and hour laws on behalf of Weaver and other similarly situated persons. Document No. 80 p. 2. The case was removed to the United States District Court for the Southern District of Ohio on December 22, 2006; transferred to this Court; and ultimately consolidated into docket number 3:06–cv–66 on April 20, 2007. *Id.*; Document No. 40.

Plaintiffs O'Brien and Dent commenced an action against Defendant in the United States District Court for the Southern District of New York on December 11, 2006, seeking overtime compensation under both federal and New York state wage and hour laws on behalf of themselves and other similarly situated persons. Document No. 80, p. 2. That action was transferred to this Court on April 19, 2007 and consolidated into docket number 3:06–cv–66 on May 23, 2007. *Id.*

Plaintiffs Ellis, Booher, Weaver and O'Brien filed a Consolidated Amended Complaint on October 6, 2006. Document No. 26; Document No. 80 p. 2. The Amended Complaint alleged a national claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter the FLSA), as well as a claim under Pennsyl-

vania wage and hour laws on behalf of Plaintiffs Ellis, Tiller, Staszak and "all similarly situated current or former" employees of Defendant. Document No. 80 pp. 2–3.

Upon Plaintiff's "unanimous, unopposed agreement," the Court on August 27, 2007 ordered appointment of a Lead Counsel Committee consisting of Carlson Lynch Ltd., Schiffrin Barroway Topaz & Kessler, LLP; Steven D. Bell Co., LPA; and Scott Cole & Associates, APC, with Gary F. Lynch and Carlson Lynch serving as Chair. Document No. 68.

The Parties[3] aver that there has been "significant document discovery, with over 400,000 pages of documents and nearly 150 videotapes being produced." Document No. 77, p. 9; Document No. 80 p. 3. The Parties also state that they engaged in a two-day mediation session with mediator Hunter Hughes on March 5–6, 2007, and a second mediation session with mediator David A. Rotman on July 11, 2007. Document No. 77 pp. 9–10; Document No. 80 pp. 3–4. They claim that as a result of the second mediation they have arrived at the Settlement that is now before the Court. Document No. 77 p. 10; Document No. 80 p. 4.

The Settlement calls for Defendant Edward Jones to pay a "maximum settlement amount" of $19,000,000, of which up to $4,750,000 will be paid to Plaintiffs' attorneys; up to $75,000 will be used to pay Plaintiffs' attorneys' litigation costs; $15,000 will be paid to each of the seven named Plaintiffs as an "enhancement"; and up to $225,000 will be used to compensate the Claims Administrator. Document No. 77, pp. 11–13; Document No. 80, p. 4.

---

2. Unless preceded by the docket number of another case, all citations to "Document No." are to documents docketed at 3:06–cv–66, the instant case.

3. The Court shall employ the term "the Parties" throughout to encompass all plaintiffs and defendants in the instant action.

The Parties estimate that "class members have worked a combined total of 360,000 work months through December, 2006," which, according to the Parties, will provide compensation to the class members at an average rate of approximately $38.00 per work month per claimant.[4] Document No. 80 p. 4.

The Parties have moved for leave to file a Second Amended Consolidated Complaint to which Defendant need not respond, and for preliminary approval of the Settlement of which the Second Amended Complaint is a part. Document No. 76; Document No. 77; Document No. 80 p. 3. They explained their positions more fully in the hearing conducted by this Court on October 11, 2007 (hereinafter "the Hearing") and in their Memorandum to the Court, Document No. 82.

## 2. The Second Consolidated Amended Complaint, Document No. 80–2 (hereinafter SAC)

The SAC divides the plaintiffs into the following classes:[5]

"**Collective Action Class**": "All current or former Securities Brokers, excluding those residing in California," who have claims against Defendant pursuant to 29 U.S.C. § 216(b) "and elect to opt-in to this action. . . ." Document No. 80–2 ¶ 8.

"**Pa Class A**": "All current Securities Brokers who work for Defendant in the State of Pennsylvania. . . ." *Id.* at ¶ 9.

"**PA Class B**": "All former Securities Brokers who have worked for Defendant in the State of Pennsylvania . . . who would otherwise be members of PA Class A." *Id.* at ¶ 10.

"**Ohio Class**": "All current and former Securities Brokers who worked for Defendant in the State of Ohio. . . ." *Id.* at ¶ 10.

"**New York Class**": "All current and former Securities Brokers who worked for Defendant in the State of New York. . . ." *Id.* at ¶ 11.

"**Remaining State Law Classes**"[6]: "All current and former Securities Brokers who worked for Defendant in any state other than California, Mississippi, Alabama, Florida, Pennsylvania, Ohio, and New York. . . ." *Id.* at ¶ 12.

The SAC lists ten causes of action:

**Count One** alleges willful violations of the FLSA's minimum wage and overtime requirements, 29 U.S.C. §§ 206, 207, and seeks payment of unpaid overtime, liquidated damages, and attorneys' fees and costs. Document No. 80–2 ¶¶ 62–69.

**Count Two** claims that Plaintiffs "would not receive any compensation unless they finalized a sale," and seeks liquidated damages equal to "the unpaid compensation for the hours worked in which [Plaintiffs] did not receive compensation equal to the federal minimum wage," as well as "interest, costs, and reasonable attorneys' fees." *Id.* at ¶¶ 70–73.

---

4. At the Hearing, the Parties noted that this figure is a "moving target," dependant upon both the number of eventual claimants and, since claims are still accruing, the date upon which the Settlement receives preliminary approval.

5. For purposes of the Settlement Notice, the Parties employ somewhat different classifications, dividing putative class members into "National Class One," whose membership excludes only covered Employees who work or worked for Defendant in "California, Mississippi, Alabama, or Florida," and "National Class Two," whose membership includes only Covered Employees who work or worked for Defendant in "Mississippi, Alabama, or Florida." Document No. 77, pp. 44, 46.

6. The Pennsylvania, Ohio, New York and Remaining State Law Classes are collectively referred to as the "State Law Classes." Document 80–2 ¶ 13.

**Count Three** alleges that Defendant failed to "keep and preserve records with respect to each of its employees" that were sufficient to determine the actual number of hours worked and the actual amount of compensation owed. *Id.* at ¶ 75. Plaintiffs claim that this constitutes a willful violation of the FLSA "within the meaning of 29 U.S.C. § 255(a)," and that this entitles Plaintiffs to recovery of unpaid overtime, an equal amount as liquidated damages, additional liquidated damages, attorneys' fees and costs.

**Count Four** alleges violation of the Pennsylvania wage and overtime laws, and seeks payment of wages claimed due to the Pennsylvania classes, as well as costs and attorneys' fees. *Id.* at ¶¶ 78–84.

**Count Five** realleges violation of the Pennsylvania laws, and seeks liquidated damages of twenty-five percent of the amount owed, pursuant to 43 P.S. § 260.10, plus interest and attorneys' fees. *Id.* at ¶¶ 85–87.

**Count Six** alleges the failure of Defendant in Pennsylvania to keep employment records and furnish Plaintiffs with pay statements "indicating the number of hours worked during the specific pay period," and seeks "appropriate" relief under the Pennsylvania Labor Laws. *Id.* at ¶¶ 88–91.

**Count Seven** claims violation of the Ohio state wage and hour laws on behalf of the Ohio class, and seeks payment of "all state overtime wages due to the Ohio Class" as well as costs and attorneys' fees. *Id.* at ¶¶ 92–98; Document No. 80–2

**Count Eight** seeks a restitution order for payment of all wages owed the New York Class due to Defendant's alleged violations of New York state wage and hour laws. *Id.* at ¶¶ 99–105.

**Count Nine** alleges violations of the wage and hour laws of all states, and seeks recovery under the laws of every state in the union except, presumably, California, Mississippi, Alabama and Florida. *Id.* at ¶¶ 11–12, 106–12.

**Count Ten** alleges the existence of "Unfair and Deceptive Practices" regulations, "('UDAP Statutes')," in every state; that Defendant has violated them by not obeying the FLSA's employment classification requirements; and that therefore Plaintiffs are entitled to recover "all owed FLSA overtime wages" as well as costs and attorneys' fees. *Id.* ¶¶ 113–19.

## II. ANALYSIS

### 1. Incompatibility of the "opt-in" and "opt-out" notice regimes.

### a. History and policy

Class actions are brought under Fed. R.Civ.P. 23.[7] They allow "[o]ne or more members of a class [to] sue or be sued as representative parties on behalf of all" if the conditions of Rule 23 are satisfied. Fed.R.Civ.P. 23(a). These actions bind every member of the class unless the action was maintained under Fed.R.Civ.P. 23(b)(3) and the putative class member affirmatively opts out of the class.[8] Fed.

---

**7.** During the pendency of this action the restyled Federal Rules of Civil Procedure 1–86 went into effect on December 1, 2007. Memorandum from the Judicial Conference of the United States (November 29, 2007)(on file with the Court). The changes are "stylistic only." Fed.R.Civ.P. 23 Advisory Committee's Note on the 2007 Amendment. As there were no substantive changes to the rule, the appli-

cation of the new Rule 23 to the instant action was neither infeasible nor "work[ed] injustice." 28 U.S.C. § 2074(a). The Court has therefore applied the new rule and, unless indicated otherwise, all citations are to the version of Fed.R.Civ.P. that became effective on December 1, 2007.

**8.** Since the Parties refer to the opt-out provision under Rule 23, and since only Rule

R.Civ.P. 23(c)(2)(B)(vii), (c)(3)(B). Conversely, actions brought under the FLSA are collective actions, and "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

In actions maintained under Fed. R.Civ.P. 23(b)(3), if the Court certifies the class it "must direct to class members the best notice that is practicable under the circumstances" of the "nature of the action"; the "definition" of the certified class; the "claims, issues, or defenses" of the class; "that a class member may enter an appearance through an attorney"; that the class member has the right to be excluded from the class; "the time and manner for requesting exclusions"; and that if the class member does not exclude himself the class judgment will be binding on him. Fed.R.Civ.P. 23(c)(2)(B). The collective action provision of the FLSA, conversely, has no notice requirement. *See* 29 U.S.C. § 216(b). However, the utility of a collective FLSA action "depend[s] on employees receiving accurate and timely notice concerning [its] pendency," and the trial court may therefore "facilitat[e] notice to potential plaintiffs." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70 110 S.Ct. 482, 486, 107 L.Ed.2d 480, 488 (1989)(applying 29 U.S.C. § 216(b) to an Age Discrimination and Employment Act case pursuant to 29 U.S.C. § 626(b)); *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1807, at 485–86 (3d ed.2005)[hereinafter Wright & Miller]. The trial court does not have "unbridled

discretion" in this matter, though, and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann–La Roche*, 493 U.S. at 174, 110 S.Ct. at 488, 107 L.Ed.2d at 491.

The most obvious effect of the choice of rule is on the size of the resulting classes. The opt-in rate in a FLSA collective action not backed by a union is generally between 15 and 30 percent. Matthew W. Lampe & E. Michael Rossman, *Procedural Approaches for Countering the Dual–Filed FLSA Collective Action and State–Law Wage Class Action*, Lab. Law. Winter/Spring 2005 311, 313–14 [hereinafter Lampe & Rossman](citing *Attorneys Explore for Surge in Wage and Hour Lawsuits, Offer Strategies*, Daily Lab. Rep. (BNA)(Dec. 12, 2002); *Attorneys Discuss Strategies for Bringing and Defending FLSA Collective Action Lawsuits*, Daily Lab. Rep. (BNA) (Aug. 13, 2002)). Although a variety of reasons for failure to opt in have been posited, the strongest, at least among comparatively well-educated English-speaking parties, is likely "inertia": the view that the notice received in the mail is just another piece of junk that the recipient has neither the time nor the interest to read, let alone act on. Noah H. Finkel, Symposium, *The Fair Labor Standards Act, State Wage-and–Hour Law Class Actions: The Real Wave of "FLSA" Litigation?*, 7 Emp. Rts. & Emp. Pol'y J. 159, 161, 174 (2003)[hereinafter Finkel](citing *Muecke v. A–Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 n. 2, 2002 U.S. Dist. Lexis 11917, at *6 n. 2 (N.D.Ill. June 21, 2002)).

23(b)(3) allows a class member to opt out, the Court assumes, although it is never stated by the Parties, that the Parties propose to maintain the instant action under Fed.R.Civ.P. 23(b)(3). *See* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

Practice and Procedure § 1772 (3d ed.2005)(noting that maintenance of a class action under Fed.R.Civ.P. 23(b)(1) or (2) does not allow class members to opt out of the action); Document No. 77, pp. 16, 21, 48.

The same inertia that promotes low response rates in opt-in collective actions fosters low *opt-out* rates in class actions maintained under Fed.R.Civ.P. 23(b)(3). Finkel at 162; *see also* Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action,* 103 Colum. L.Rev. 149, 224 (arguing that all default rules have a "certain stickiness," since the necessity for affirmative action to escape the rule imposes transaction costs which people might prefer to avoid). As a result, for similar causes of action, Rule 23 classes are much larger than the corresponding § 216(b) collective action groups; they may even be "exponentially greater" and "number[ ] in the millions." *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 310 (3d Cir.2003); *see also* Finkel at 174.

The "overwhelming majority" of class actions settle rather than proceed to trial. Richard A. Nagareda, *Closure in Damage Class Settlements: The Godfather Guide to Opt-out Rights,* 2003 U. Chi. Legal F. 141, 147 (2003)[hereinafter *Guide* ](citations omitted). Indeed, there has been a proliferation of "settlement classes," such as the one before the Court, in which the class is not certified until a settlement has been reached; the court certifies the class for settlement purposes only; and the notice of class pendency sent to the class members also contains the terms of the settlement. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 786 (3d Cir.1995); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 618, 117 S.Ct. 2231, 2247, 138 L.Ed.2d 689, 709 (1997)(noting that "[a]mong current applications of Rule 23(b)(3), the 'settlement class' has become a stock device") (citations omitted); Manual for Complex Litigation (Fourth) § 21.632 (2004). As a result, large class actions have become less devices for litigation than "vehicles for 'transactions' in which class members' rights to sue are 'bought and sold' in exchange for an alternative bundle of legal rights described in the class settlement agreement." *Guide* at 147 (quoting William B. Rubenstein, *A Transactional Model of Adjudication,* 89 Geo. L.J. 371, 419 (2001)).

Whose rights are being traded, by whom [9] and how, is determined by whether class members must opt in or opt out. In both opt-in and opt-out settlement cases the negotiation is completed before most if not all of the putative class members are even aware of the existence of the action. However, once members of an opt-out class receive their notice of pendency in the mail, containing "an offer they can't refuse," *id.* at 143–44, if they nonetheless do wish to refuse the offer they must do so affirmatively.[10] If they never see the no-

---

**9.** It bears remembering that "[c]lass counsel stand to gain financially from . . . [a] class action only by precipitating a settlement from the defendant or through the more risky, costly, and rare path of a full-scale, class-wide trial." *Guide* at 150 (citing Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal Practice,* 47 DePaul L.Rev. 267, 270–71 (1998)). This suggests the eventual alignment of the interests of class counsel and *defendant* at some point during the negotiating process. *See id.; see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 852 & n. 30, 119 S.Ct. 2295, 2317–18 & n. 30, 144 L.Ed.2d 715, 743–44 & n. 30 (1999)(noting that "with an already enormous fee within counsel's

grasp, zeal for the client may relax sooner than it would in a case brought on behalf of one claimant").

**10.** The sending of both notices simultaneously tends to suppress opt-outs below even their historically low numbers, since "where notice of the class action is . . . sent simultaneously with the notice of the settlement itself, the class members are presented what looks like a fait accompli." *General Motors,* 55 F.3d at 812–13 (quoting *Mars Steel v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 680–81(7th Cir. 1987)).

tice of pendency among the stacks of throwaway mail in their mailbox, or if they merely forget to post the opt-out notice in time, they are forever bound by the terms of the agreement. Since a low number of objectors assures a global settlement under whatever terms are approved by the Court, *see* Fed.R.Civ.P. 23(e), and since a low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously, so long as there are sufficient "premium payments" to named plaintiffs, and so long as class counsel's compensation is arranged, the parties negotiating the settlement on behalf of the plaintiffs have no incentive to seek anything beyond the minimum necessary for judicial approval, regardless of the actual benefit to the absent class members whom they purport to represent.

Conversely, if the absent parties must opt into an action, they can *never* be bound by any agreement absent their express consent. There will be no global settlement, regardless of the court's approval, without the settlement's affirmative ratification by those whom it seeks to bind. As a result, the scheme's proponents must craft a settlement so appealing that a number of putative parties sufficient to allow a global settlement will take the time and trouble to opt in.

Indeed, the "dynamics" of every phase of the negotiation process are affected by the size of the class involved, which is in turn determined in large part by whether membership is established on an opt-in or opt-out basis. *See De Asencio*, 342 F.3d at 310. As suggested above, any settlement agreement is necessarily predicated on the possibility of achieving "global peace," a state in which few if any potential claims can survive ratification of the agreement. *Id.* at 310–11; *Guide* at 148–50. As a

result, the parties promoting settlement must seek to bind as many potential class members as possible. *See De Asencio*, 342 F.3d at 310–11; *Guide* at 148–50.

Since only those parties who opt into a collective action may be bound by that action, and since opt-in rates tend to be low, an opt-in provision such as that contained within 29 U.S.C. § 216(b) militates against a global settlement. *See De Asencio*, 342 F.3d at 310. However, hybrid actions, which include both FLSA and state law claims, cause the FLSA claims to be "swept into the case if class certification is granted." Lampe & Rossman at 315 (citing *Attorneys Discuss Strategies for Bringing and Defending FLSA Collective Action Lawsuits*, Daily Lab. Rep. (BNA)(Aug. 13, 2002)(quoting a plaintiffs' attorney as calling a Rule 23 class " 'a nice way to wrap around' the opt-in process to get to the extra plaintiffs who fall through the cracks")). Moreover, there is authority for the proposition that adjudication of similar state law claims precludes adjudication of claims under FLSA at a later date. *See Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 921–23 (9th Cir.2003); Thomas A. Linthorst & Richard G. Rosenblatt, *Wage and Hour Class Actions: Courts Grapple With Conflict Between Rule 23 and FSLA's Opt-in Requirement*, 188 N.J. L.J. 118 (April 9, 2007)[hereinafter Linthorst & Rosenblatt]. That is precisely the position of the Parties in the case at bar, who stated at the Hearing that if the putative class members did not opt out of the Rule 23 class, they would be precluded from bringing any FLSA claims even though they had not opted into the FLSA collective action. *See also* Document No. 77, § V(C)(1)(stating that members of the hybrid FLSA/Rule 23 class who do not opt out of the Rule 23 class will be deemed to have released, "to the fullest extent permitted by law . . . all federal law claims").

The FLSA as originally enacted in 1938 permitted representative actions to recover under its minimum wage, 29 U.S.C. § 206, and overtime, 29 U.S.C. § 207, provisions. *Hoffmann–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482, 488, 107 L.Ed.2d 480, 490 (1989); *De Asencio*, 342 F.3d at 305–06. A subsequent Supreme Court decision, *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), extended the limits of "working time" under the FLSA beyond those which Congress had intended. *See De Asencio*, 342 F.3d at 305–06. This engendered a "vast flood of litigation" which created "an appalling national problem" that Congress found "would [if unchecked] bring about financial ruin of many employers and seriously impair the capital resources of many others...." 29 U.S.C. § 251(a); *De Asencio*, 342 F.3d at 306 (citations omitted); 93 Cong. Rec. 2, 2,089, 2,098 (1947)(statements of Sen. Donnell).[11] Moreover, Congress objected to the "unwholesome" practice, permitted by the original FLSA, of

> "allow[ing] an individual to come into court alleging that he is suing on behalf of 10,000 persons and actually not hav[ing] a solitary person behind him, and then later on hav[ing] 10,000 men join in the suit, which was not brought in good faith, was not brought by a party in interest, and was not brought *with the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit.*"

93 Cong. Rec. 2, 2,182 (1947)(statement of Sen. Donnell)(emphasis added).

To accomplish its two-fold purpose of "limiting private FLSA plaintiffs to employees who asserted claims in their own

right and freeing employers of the burden of representative actions," Congress passed the Portal–to–Portal Act of 1947 which, in pertinent part, amended 29 U.S.C. § 216(b) by adding the sentence, "No employee shall be made a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is sought." *Hoffmann–LaRoche*, 493 U.S. at 173, 110 S.Ct. at 488, 107 L.Ed.2d at 490; 93 Cong. Rec. 2, 2,182 (1947). This opt-in language was designed specifically to "prohibit what precisely is advanced under [Fed.R.Civ.P.] 23...." *Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003). The opt-in provision "has been untouched by Congress" for 60 years. *Aquilino v. Home Depot, U.S., Inc.*, Civil Action No. 04–cv–4100, 2006 WL 2023539, at *2 & n. 1, 2006 U.S. Dist. LEXIS 48554, at *5–*6 & n. 1 (D.N.J. July 18, 2006)(noting that in 1990 Congress expanded the federal district courts' ability to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), and subsequently expanded the courts' diversity jurisdiction over class action lawsuits by enacting the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1453, 1711–15, but that there is no evidence that any of this legislation has modified the FLSA).

**b. Jurisdiction**

Plaintiffs have pleaded jurisdiction for their FLSA claims under 28 U.S.C. 1331. Document No. 80–2 ¶ 33. They have pleaded supplemental jurisdiction over their state law claims under 28 U.S.C. 1367, alleging that both state and federal causes of action "derive from a common

---

**11.** Senator Donnell was Chairman of the Senate Judiciary Committee at the time. Brief for the United States Secretary of Labor as Amicus Curiae Supporting Respondents, *Long*

*John Silver's Rests., Inc. v. Cole*, 409 F.Supp.2d 682 (D.S.C.2006), *brief available at* http://www.dol.gov/sol/media/briefs/LJSbrief–12–13–2005.htm (last visited Dec. 16, 2007).

nucleus of operative facts." *Id.* ¶ 35. Were this their only basis for the Court's jurisdiction over their state claims, the analysis would be relatively straightforward, and the Court would merely follow the supplemental jurisdiction template laid out by *De Asencio*, 342 F.3d at 307–13.

Plaintiffs have also, however, pleaded diversity jurisdiction under the recently-enacted 28 U.S.C. 1332(d). Document No. 80–2 ¶ 34; 28 U.S.C. § 1332(d)(effective February 18, 2005). Diversity jurisdiction under this subsection will obtain so long as Plaintiffs can show that the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; the matter is a class action; "any member of a class of plaintiffs is a citizen of a State different from any defendant"; and "the number of members of all proposed plaintiff classes in the aggregate" is at least 100. 28 U.S.C. § 1332(d)(2), (d)(5)(B). The Parties have jointly moved for the Court's acceptance of the SAC and Defendant seeks leave not to serve a response. *See* Document No. 75; Document No. 77; Document No. 80–7 p. 3. Indeed, the SAC is part of the Settlement itself. *See* Document No. 77 § I(U). The Court regards this as a stipulation to the class action diversity requirements and finds, since the stipulations are plausible in the context of this action, that it has no cause to disturb them.[12]

The Court is therefore faced with a case in which it has original rather than supplemental jurisdiction over essentially identical claims involving both opt-in and opt-out classes. This Court has already found the "class certification procedures under 29 U.S.C. § 216(b) [to be] incompatible with those set forth in Fed.R.Civ.P. 23." *Brothers v. Portage Nat'l Bank*, Civil Action No. 3:06–94, 2007 WL 965835, at *7, 2007 U.S. Dist. LEXIS 24326, at *23 (W.D.Pa. March 29, 2007). That conclusion is not unusual. *See, e.g., Ramsey v. Beck*, Civil Action No. 07–635, 2007 WL 2234567, at *2, 2007 U.S. Dist. LEXIS 56129, at *7 (E.D.Pa. Aug.1, 2007)(holding that FLSA collective actions and Rule 23 state-law class actions "are incompatible and cannot be brought together under one lawsuit"); *Hyman v. WM Fin. Servs., Inc.*, No. 06–CV–4038, 2007 WL 1657392, at *2, *6, 2007 U.S. Dist. LEXIS 41433, at *4–*8, *18 (D.N.J. June 7, 2007)(preferring to engage in the *De Asencio* supplemental jurisdiction analysis, but still holding that allowing plaintiffs to bring a state count that "essentially mimic[ked] a FLSA claim would defeat Congress's intent in drafting the FLSA's opt-in requirement"); *Otto v. Pocono Health Sys.*, 457 F.Supp.2d 522, 523 (M.D.Pa.2006)(holding that allowing both opt-in and opt-out actions on essentially the same claims would undermine Congressional intent) (citation omitted); *Herring v. Hewitt Assoc., Inc.*, Civ. No. 06–267, 2006 WL 2347875, at *2, 2006 U.S. Dist. LEXIS 56189, at *5 (D.N.J. Aug. 11, 2006)(holding that the two notice regimes are "inherently incompatible") (citations omitted); *Himmelman v. Cont'l Cas. Co.*, No. Civ. 06–166, 2006 WL 2347873, at *2, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006)(also holding that the two notice schemes are "incompatible") (citations omitted); *Aquilino v. Home Depot U.S.A., Inc.*, Civil Action No. 04–cv–4100, 2006 WL 2023539, at *3–*4, 2006 U.S. Dist. LEXIS 48554, at *11–*12 (D.N.J. July 17, 2006)(quoting *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 470 (N.D.Cal.2004))(holding that Congress's intent, which "has been established for more

---

12. It does not appear from the Parties' *de facto* stipulations pursuant to the Settlement Agreement that there is any ground for mandatory declination of jurisdiction pursuant to 28 U.S.C. § 1332(d)(4). *See* Document No. 77 p. 8; Document No. 80–2 ¶ 46.

than 60 years," to apply an opt-in procedure to FLSA claims " 'would largely be thwarted if a plaintiff were permitted to back door the shoe horning in of unnamed parties' pursuant to an exercise of supplemental jurisdiction"); *Moeck v. Gray Supply Co.,* No. 03–1950, 2006 WL 42368, at *5, 2006 U.S. Dist. LEXIS 511, at *15–*16 (D.N.J. Jan. 6, 2006)(citing *McClain v. Leona's Pizzeria, Inc.,* 222 F.R.D. 574 (N.D.Ill.2004))(holding that allowing a hybrid FLSA/Rule 23 action on essentially the same claims "would undermine Congress's intent to limit [such] claims to collective actions"); *see also* Linthorst & Rosenblatt (stating that "a string of recent decisions" have found state law overtime claims to be "incompatible with the FLSA's opt-in requirement"). Neither is it new. *See Robinson v. Sizes Unlimited, Inc.,* 685 F.Supp. 442, 445 n. 7 (D.N.J.1988)(citing *Sussman v. Vornado, Inc.,* 90 F.R.D. 680, 683 n. 7 (D.N.J.1981))(noting that "[t]here is a fundamental, irreconcilable difference" between a Rule 23 and a FLSA class action); *LaChapelle v. Owens–Ill., Inc.,* 513 F.2d 286, 289 (5th Cir.1975)(holding that Rule 23(c) opt-out and FLSA opt-in classes are "mutually exclusive and irreconcilable").

Although not specifically identified as such, federal preemption theory informs the opt-in/opt-out incompatibility decisions listed above.[13] The question decided was not whether federal law preempted recovery under parallel state wage and overtime laws, but merely whether both state and federal claims could be brought in the same federal action. *But see Lerwill v. Inflight Motion Pictures, Inc.,* 343 F.Supp. 1027, 1029 (D.C.Cal.1972)(holding that "the sole remedy available to the employee for enforcement of whatever rights he may have under the FLSA" is 29 U.S.C. 216(b)). The Third Circuit has left open the question of whether the Portal–to–Portal Act amendments as incorporated in 29 U.S.C. § 216(b) "affect state law actions." *De Asencio,* 342 F.3d at 307 & n. 7 (holding only that plaintiffs' argument that the amendments did not was based on a faulty reading of the Act's legislative history).

The present case does not require the Court to decide whether the FLSA is the sole remedy for enforcement of the rights guaranteed by the FLSA, and the Court declines to do so. Nonetheless, the Court finds preemption analysis useful in assessing the opt-in/opt-out conflict. Preemption may also have direct application to Plaintiffs' tenth cause of action. *See* Document No. 80–2 ¶¶ 113–19. The Court will therefore review the doctrine at this time.

**c. Preemption**

■ The Supremacy Clause of Article VI of the United States Constitution gives Congress the power to preempt state law. U.S. Const. art. VI, cl. 2; *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.,* 489 U.S. 493, 509, 109 S.Ct. 1262, 1273, 103 L.Ed.2d 509, 526–27 (1989). The first step in preemption analysis is the determination of Congress's intent, which may be explicitly stated in the statute or implied by the presence of an "actual conflict" between the federal statute and state law. *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 884, 120 S.Ct. 1913, 1927, 146 L.Ed.2d 914, 934 (2000) (citations omitted); *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299–300, 108 S.Ct. 1145, 1150–51, 99 L.Ed.2d 316, 325 (1988) (citations omitted)(holding that there is actual conflict where, for example, "the state law stands as an obstacle to the accomplishment of

---

**13.** *Moeck* does specifically address preemption, but only in the context of assessing the availability of state common law remedies for claims "directly covered by the FLSA (such as overtime)...." *Moeck,* 2006 WL 42368, at *2, 2006 U.S. Dist. LEXIS 511, at *5–*6.

the full purposes and objectives of Congress"). There is a presumption that Congress "ordinarily would not intend to permit a significant conflict." *Geier,* 529 U.S. at 885, 120 S.Ct. at 1927, 146 L.Ed.2d at 934.

■ Congress in 1947 perceived a national emergency spawned by out-of-control litigation of employee minimum wage and overtime claims. *See* 29 U.S.C. § 251; 93 Cong. Rec. 2, 2,089–98, 2,182 (statements of Sen. Donnell). It enacted the opt-in provision of the FLSA in response. *De Asencio,* 342 F.3d at 306, 310 (finding that, "[f]or policy reasons articulated in the legislative history, Congress chose to limit the scope of representative actions for overtime pay and minimum wage violations"). In addition to controlling the volume of litigation, Congress sought to ensure that "absent individuals would not have their rights litigated without their input or knowledge." *Otto,* 457 F.Supp.2d at 524. Indeed, adoption of the opt-in provision in 29 U.S.C. § 216(b) was "a crucial policy decision." *De Asencio,* 342 F.3d at 311.

Since there is nothing in 29 U.S.C. § 216(b) that specifically limits an employee's recovery to its terms, Congress's intent to preempt must be inferred. *Lerwill,* 343 F.Supp. at 1028. However,

> a clearer case of implied intent to exclude other alternative remedies by the provision of one would be difficult to conceive. It should not require resort to Latin maxims of construction to show that the provision of one detailed remedy, which necessarily works to define the substantive right to be enforced, would exclude the possibility of alternative remedies in the absence of a clear showing that Congress intended such

alternatives to be provided by judicial construction.

*Id.* at 1028–29; *see also Platt v. Burroughs,* 424 F.Supp. 1329, 1340 (E.D.Pa.1976)(citing *Lerwill,* 343 F.Supp. at 1027).

The FLSA does possess a saving clause.[14] *See* 29 U.S.C. § 218. In pertinent part, it reads: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter...." 29 U.S.C. § 218(a). The terms of the saving clause are clear and narrowly drawn: they merely establish a wage and hour "floor" above which the states are free to rise, and "leave undisturbed 'the traditional exercise of the states' police powers with respect to wages and hours *more generous than the federal standards.*' " *Lehman v. Legg Mason, Inc.,* No. 1:06–CV–02484, 2007 WL 2768519, at *3, 2007 U.S. Dist. LEXIS 69648, at *11 (M.D.Pa. Sept.20, 2007)(quoting *Pac. Merch. Shipping Ass'n v. Aubry,* 918 F.2d 1409, 1424 (9th Cir.1990))(emphasis added); *Finkel* at 166. This limited language has nonetheless been used by some courts to ground the conclusion that, in combined state and federal wage and hour complaints, "nothing in the plain text of the FLSA reflects Congressional intent to limit the substantive remedies available to an employee under state law, nor to limit the procedural mechanism by which such a remedy may be pursued." *Lehman,* 2007 WL 2768519, at *3, 2007 U.S. Dist LEXIS 69648, at *12 (citing *Beltran–Benitez v. Sea Safari, Ltd.,* 180 F.Supp.2d

---

14. A saving clause is a "statutory provision exempting from coverage something that would otherwise be included." Black's Law Dictionary 1371 (8th ed.2004).

772, 774 (E.D.N.C.2001); Finkel at 174–74).

The language of the saving clause simply cannot be stretched so far. In addition, the authorities cited to support unfettered prosecution of hybrid state law and FLSA cases are not always apposite. For example, Finkel's assertion that rejection of hybrid suits for incompatibility or on the ground of preemption of state remedy is relatively uncommon was made in a paper published in 2003, several years before the proliferation of cases in the Third Circuit holding that hybrid FLSA/Rule 23 actions cannot be maintained due to the incompatibility of the opt-in and opt-out regimes. Finkel at 159, 174–75; Linthorst & Rosenblatt. Notably, the first case cited by Finkel in support of his thesis was *De Asencio v. Tyson Foods, Inc.*, 2002 WL 1585580, **4–5, 2002 U.S. Dist. Lexis 13038, at *12–*13 (E.D.Pa. July 12, 2002), which was reversed by the Third Circuit in *De Asencio*, 342 F.3d at 313. Finkel at 175 n. 75.

In addition, *Beltran–Benitez* is readily distinguishable from the instant case. In *Beltran–Benitez* the FLSA claim was for unpaid overtime wages, while the state law claim was for improper and unnoticed deductions from the employee plaintiffs' paychecks. *Beltran–Benitez*, 180 F.Supp.2d at 772. The state law claim had nothing to do with overtime; 29 U.S.C. § 216(b) was not implicated in the state law action; there was no conflict between the policies underlying the FLSA and the state law claims; and there was therefore no reason that the opt-in FLSA claims and the opt-out state law claims could not be brought in the same action. This Court has already held that Rule 23 claims that do not "coincide with the FLSA action" may be brought together with FLSA claims in the same lawsuit and, indeed, the Third Circuit has held that "[a] federal court could

have subject matter jurisdiction over two *federal* claims, one requiring opt-in and the other opt-out." *De Asencio*, 342 F.3d at 310 n. 14 (emphasis added); *Brothers*, 2007 WL 965835, at *6, 2007 U.S. Dist. LEXIS 24326, at *18–*19. The simultaneous prosecution of unrelated opt-in and opt-out claims is not, however, the principal issue before the Court.

■ In any event, the presence of a limited saving clause should not be read to obviate FLSA's preemptive implications. To the contrary, a saving clause "does *not* bar the ordinary working of conflict preemption principles" whether the preemption is explicit or implicit. *Geier*, 529 U.S. at 869, 873–74, 120 S.Ct. at 1919, 1921, 146 L.Ed.2d at 924, 926–27 (emphasis in original) (citations omitted). To hold otherwise, as in *Lehman*, would be to "permit[ ] the law [containing the saving clause] to defeat its own objectives" and perhaps " 'destroy itself.' " *Geier*, 529 U.S. at 872, 120 S.Ct. at 1920, 146 L.Ed.2d. at 926 (quoting *AT & T v. Central Office Tel., Inc.*, 524 U.S. 214, 228, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998)).

Congress had two goals in amending 29 U.S.C. 216(b): to limit private FLSA claims to those affirmatively asserted by affected employees "in their own right," and to "free[ ] employers of the burden of representative actions." *Hoffmann–La Roche*, 493 U.S. at 173, 110 S.Ct. at 488, 107 L.Ed.2d at 490. The amendments were in response to a perceived national crisis spawned by excessive litigation against employers, and "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *Hoffmann–La Roche*, 493 U.S. at 173, 110 S.Ct. at 488, 107 L.Ed.2d at 491; *see also* 93 Cong. Rec. 2, 2,087–98, 2,182–86 (statements by Sen. Donnell). Allowing Plaintiffs to "circumvent the [FLSA] opt-in requirement and bring unnamed parties into

federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions." *Otto*, 457 F.Supp.2d at 523 (quoting *Moeck*, 2006 WL 42368, at *5, 2006 U.S. Dist. LEXIS 511, at *15–*16); *see also McClain*, 222 F.R.D. at 577 (citation omitted). Indeed, allowing both the state law and FLSA claims to proceed in the same action "would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement." *Otto*, 457 F.Supp.2d at 524.

**Conclusion**

In light of the policies that underlie the FLSA; Congress's clear intent to further those policies through enactment of the Portal–to–Portal Act's amendments to section 16(b) of the FLSA, 29 U.S.C. § 216(b); and the total negation of those policies that would occur if the Court were to allow Plaintiffs to pursue state law overtime remedies under Fed.R.Civ.P. 23 and FLSA opt-in remedies in the same action, the Court finds that Plaintiffs' parallel state claims must be dismissed. The Court notes in passing that the same reasoning would also require dismissal of the state claims if Plaintiffs had only pleaded supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *Brothers*, 2007 WL 965835, at *4, *6–*7, 2007 U.S. Dist. LEXIS 24326, at *12–*15, *18–*23. A conflicts analysis of each count of the Complaint, Document No. 80–2, follows:

**Conflicts analysis of the counts contained in the SAC**

Counts One, Two and Three, Document No. 80–2 ¶¶ 62–77, plead only violations of the FLSA. Since state law and hence Rule 23 are not invoked, there is no conflict with Congressional intent.

Count Four, *id.* at ¶¶ 78–84, is a claim for overtime reimbursement under Pennsylvania state law. Plaintiffs' assertion that Pennsylvania law allows overtime payments for "hours worked in excess of . . . eight per day," *id.* at ¶ 80, comports with neither the cited law nor code; in fact the statute states that "no pay for overtime . . . shall be required except for hours in excess of forty hours in a workweek." 43 P.S. § 333.104(c); *see also* 34 Pa.Code § 231.41. The Pennsylvania and FLSA overtime laws both require the same time and a half payments for all hours worked past 40 in a week. *See* 29 U.S.C. § 207(a); 43 P.S. § 333.104(c). Moreover, the Pennsylvania law overtime exemptions which Plaintiffs claim are inapplicable to them track the FLSA exemptions almost word for word. *See* 29 U.S.C. § 213(a)(1); 43 P.S. § 333.105(a)(5); Document No. 80–2 ¶¶ 25–27. Finally, although not a matter strictly within the four corners of the saving clause, the Court notes that Plaintiffs seek no remedies in Count Four that they do not seek under the FLSA. *See* 29 U.S.C. 218(a); Document No. 80–2 ¶¶ 69, 73, 75, 84. The Court therefore finds that prosecution of this claim in the instant action would, for the reasons set forth earlier in this opinion, serve to frustrate Congress's intent in establishing FLSA's opt-in notice regime and, to avoid this impermissible conflict, Count Four is hereby dismissed.

Count Five, Document No. 80–2 ¶¶ 85–87, seeks a twenty-five percent "penalty" for all unpaid wages, pursuant to 43 P.S. § 260.10. The remedy actually supplied by the statute is more limited, capping liquidated damages at twenty-five percent "of wages due, or five hundred dollars ($500), whichever is greater." 43 P.S. § 260.10. The FLSA also provides for liquidated damages, but in an amount equal to the wages owed, with no cap. 29 U.S.C. 216(b). In terms of the SAC, the Pennsylvania state laws offer no greater wage and hour protections than the FLSA. Indeed,

due to the FLSA's more generous liquidated damages scheme, actual recovery under the state law might well be less. Here, too, the Court finds that prosecution of the state claim in tandem with Plaintiffs' FLSA claims would, for the reasons set forth earlier in this opinion, serve to negate Congress's intent in establishing the FLSA's opt-in notice regime and, to avoid this impermissible conflict, Count Five is hereby dismissed.

Count Six, Document No. 80–2 ¶¶ 88–91, seeks compensation for Defendant's alleged failure to keep adequate records of hours worked and overtime hours, and to furnish statements of hours worked to Plaintiffs, in violation of Pennsylvania law and code, citing 43 P.S. § 333.108 and 34 Pa.Code §§ 231.31 and 231.36. However, the only remedy available for this infraction belongs to the state, and consists of a fine of not less than $100 nor more than $500 for each day the employer is out of compliance. *See* 43 P.S. §§ 333.108, 333.112(c); 34 Pa.Code. §§ 231.12, 231.31, 231.36. Since Plaintiffs have failed to state a cause of action for which they may under any circumstances obtain a remedy, Count Six is dismissed with prejudice. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir.2002).

Count Seven, Document No. 80–2 ¶¶ 92–98, seeks compensation for allegedly unpaid overtime under Ohio state law. Ohio's overtime law explicitly tracks the FLSA, stating that "[a]n employer shall pay an employee for overtime ... in the manner and methods provided in and subject to the exemptions of section 7 and section 13" of the FLSA. Ohio Rev.Code. Ann. § 4111.03. The absurdity of allowing Congress's purpose in amending the FLSA to be thwarted by the maintenance of a

state claim that exists solely by reference to the language of the FLSA is manifest. The Court therefore finds that prosecution of this claim in the instant action would, for the reasons set forth earlier in this opinion, serve to negate Congress's intent in establishing FLSA's opt-in notice regime and, to avoid this impermissible conflict, Count Seven is hereby dismissed.

Count Eight, Document No. 80–2 ¶¶ 99–105, seeks overtime compensation under the laws of the state of New York. New York's overtime scheme is also established solely by reference to §§ 7 and 13 of the FLSA, although it deletes the exemptions set forth in § 13(a)(2) and (a)(4). N.Y. Comp.Codes R. & Regs tit.12, § 142–2.2. That is a distinction without a difference, however, since Congress has repealed both sections. 29 U.S.C. § 213(a)(2), (a)(4). In light of New York's adoption of the FLSA's overtime provisions, it is unclear to the Court why Plaintiffs allege that the New York law requires overtime payment for hours worked in excess of eight per day.[15] *See* Document No. 80–2 ¶ 101. In any event, the relationship between the New York law and the FLSA is essentially the same as that between the Ohio law and the FLSA as described above and, therefore, allowing the New York state claims to proceed in the same action as Plaintiffs' FLSA claims would be equally absurd. Count Eight is therefore dismissed.

Count Nine, Document No. 80–2 ¶¶ 106–12, seeks recovery of overtime claims made under the laws of the respective states of every putative member of the State Law Classes. Plaintiffs do not bother to set forth the actual terms of those laws, merely asserting that every state requires wages at time-and-a-half for all work after the first forty hours in a week.

---

**15.** The Court does acknowledge, however, that N.Y. Lab. Law § 160 defines eight hours as a "legal day's work" in almost all cases,

and allows "an agreement for overwork at an increased compensation" in some circumstances.

This conflicts with what Plaintiffs said at the Hearing, where they asserted that Alabama, Mississippi and Florida do not have state minimum wage and overtime laws. *See also* Document No. 77 §§ I(R), V(A)-(B)(indicating that persons employed by Defendant in Mississippi, Alabama and Florida have no state law claims to settle). Regardless, absent a showing by Plaintiffs that there is a distinction in any of the states' wage and overtime laws that implicates the FLSA's saving clause, the Court will not infer one. Therefore, for the reasons stated above, the Court orders that Count Nine be dismissed.

Count Ten, Document No. 80–2 ¶¶ 113–19, seeks to recover the overtime wages which Plaintiffs state they are owed through application of state "Unfair and Deceptive Acts and Practices" (hereinafter UDAP) laws, which Plaintiffs assert exist in every state. It is impossible for the Court to determine precisely what Plaintiffs claim, as they have neglected to cite even a single statute in support. However, to the extent that they seek to use the UDAP statutes to authorize common law fraud claims, their attempt is misguided.

Although the law is not settled regarding the FLSA's preemption of common law claims, there is authority in multiple jurisdictions for the proposition that, so long as the common law claims are grounded on the same facts as the FLSA claims and are therefore "duplicative," Plaintiffs' sole remedy lies with the FLSA. *Chen v. Street Beat Sportswear, Inc.*, 364 F.Supp.2d 269, 293 (E.D.N.Y.2005)(citing *Petras v. Johnson*, No. 92–CIV. 8298, 1993 WL 228014, at *3, 1993 U.S. Dist. LEXIS 8464, at *7–*9 (S.D.N.Y. June 22, 1993)); *see also Moeck*, 2006 WL 42368 at *2, 2006 U.S. Dist. LEXIS 511, at *4 (holding that claims alleging defendants' misrepresentations of eligibility for overtime were "merely based on Plaintiffs' overtime claims," and hence

"preempted by the FLSA"); *Johnston v. Davis Sec., Inc.*, 217 F.Supp.2d 1224, 1227–28 (D.Utah 2002)(holding that common law claims based on the "same facts and circumstances" as the FLSA claims "do not give rise" to separate actions). Notably, in *Petras,* the fraud in question was defendants' concealment of plaintiff's rights under the FLSA. *Petras,* 1993 WL 228014, at *3, 1993 U.S. Dist. LEXIS 8464, at *8; *see also Alexander v. Vesta Ins. Group, Inc.*, 147 F.Supp.2d 1223, 1240–41 (N.D.Ala.2001)(refusing to consider common law fraud claims that merely "recast ... FLSA overtime claims ..."). That is precisely what Plaintiffs appear to be alleging in Count Ten of the SAC.

In view of the cases cited above, and in light of the foregoing preemption analysis, the Court orders that, to the extent that the Count Ten claims are for common law fraud, they are dismissed. To the extent that the Count Ten claims are based on some other theory, the Court will not certify what is not clearly pleaded, and hence not clearly understood by the Court.

### 2. The Rules Enabling Act

#### a. The argument

The Court finds that the incompatibility analysis conducted above is more than sufficient ground for dismissal of the duplicative state law claims for which Plaintiffs seek class certification under Fed.R.Civ.P. 23. There is, however, another compelling argument against allowing Plaintiffs' hybrid suit. As first set forth by the United States Secretary of Labor in 2005, it is as follows:

Congress intended the Portal–to–Portal amendments enacted in 1947 to allow an employee's FLSA claims to be litigated as part of a collective action "only with his or her express written consent" and, further, to "free[ ] employers of the burden of rep-

resentative actions." Brief for the United States Secretary of Labor as Amicus Curiae Supporting Respondents, *Long John Silver's Rest., Inc. v. Cole,* 409 F.Supp.2d 682 (D.S.C.2006), *brief available at* http://www.dol.gov/sol/media/briefs/LJSbrief–12–13–2005.htm (last visited Dec. 16, 2007)[hereinafter DOL brief](citing *Hoffmann–La Roche,* 493 U.S. at 173, 110 S.Ct. at 488, 107 L.Ed.2d at 490). These are clearly substantive rights. Moreover, the relative sizes of the classes generated by opt-in and opt-out procedures "fundamentally impact[ ] the relative litigation strengths of the parties," and hence affect their substantive rights in that way as well. *Id.* (citing *De Asencio,* 342 F.3d at 310). When parallel actions are brought simultaneously under both the FLSA and Fed.R.Civ.P. 23 a decision on the Rule 23 action has "res judicata effect on any unnamed class members who did not opt out," even though Congress's "clear aim" in amending the FLSA "was to ensure that each employee expressly consents to any collective adjudication of his or her rights under the FLSA." *Id.* (quoting *Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1157 (7th Cir.1999)). The Rules Enabling Act (hereinafter REA) gives the Supreme Court the power to promulgate rules of practice and procedure in the lower federal courts. 28 U.S.C. § 2072(a); *see also* Linthorst & Rosenblatt. That power is not unlimited, however, and the REA states in pertinent part that "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); Linthorst & Rosenblatt. Therefore, since "the statutory written consent provision is substantive," the contrary provisions of Fed. R.Civ.P. must yield to Congress's intent in amending the FLSA. DOL brief.[16]

### b. Substantiveness analysis

■ The proscriptions of the REA against abridgement, enlargement or modification of any substantive right are clear. *See Semtek Int'l, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 502–04, 121 S.Ct. 1021, 1025–26, 149 L.Ed.2d 32, 38–40 (2001)(holding that notwithstanding Fed. R.Civ.P. 41(b)'s use of the phrase "adjudication upon the merits," dismissal under 41(b) cannot be read to inevitably result in claim preclusion, since to hold otherwise "would arguably violate" the REA by allowing a rule to alter the dimensions of a substantive right); *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 542–44 & n. 2, 104 S.Ct. 831, 842 & n. 2, 78 L.Ed.2d 645, 659–60 & n. 2 (1984)(Stevens, J., concurring in the judgment) (citations omitted)(holding that the demand requirement in shareholder derivative actions is "one of substantive law," and that therefore "there is substantial doubt whether [Fed.R.Civ.P. 23.1] could create such a requirement consistently with the Rules Enabling Act").

That 29 U.S.C. § 216(b) prohibits "what precisely is advanced under Rule 23," *Cameron–Grant,* 347 F.3d at 1248, has been well-illustrated earlier in this opinion. The controversy arises over whether the FLSA's opt-in language implicates a substantive right or is merely procedural. *See, e.g., Lehman,* 2007 WL 2768519, at *4, 2007 U.S. Dist. LEXIS 69648, at *14–*15 (holding, based on the absence of contrary authority, that the different notice requirements are merely procedural); *Westerfield v. Wash. Mut. Bank,* No. 06–CV–2817, 2007 WL 2162989, at * 1–*3, 2007 U.S. Dist. LEXIS 54830, at *3–*10 (E.D.N.Y. July 26, 2007)(finding only a procedural issue based on the absence of cases hold-

---

**16.** The foregoing required some conflation of sources, as the DOL brief related to an arbitration proceeding rather than a class certification scheme. *See* DOL brief; Linthorst & Rosenblatt.

ing otherwise; claiming existence of contrary authority; rejecting the DOL brief because it was written for an arbitration proceeding; holding that plaintiffs' rights under the FLSA are wholly distinct from those under state law and there could therefore be no abridgement of substantive rights); *Farhy v. Janney Mongomery Scott, LLC,* No. civ. A. 06–3202; Civ. A. 06–3969, 2007 WL 1455764, at *1, 2007 U.S. Dist. LEXIS 39112, at *2–*4 (E.D.Pa. April 26, 2007)(citing *De Asencio,* 342 F.3d at 301)(holding that the notice requirements are merely procedural based on the lack of contrary authority and the fact that *De Asencio* did not consider the issue); *Neary v. Metropolitan Property and Cas. Ins. Co.,* 472 F.Supp.2d 247, 250–52 (D.Conn.2007)(declining to pursue the REA issue, citing the dearth of cases on point, but dismissing the disputed supplemental opt-out claims under the reasoning of *De Asencio* ).

As the citations above indicate, the REA argument has received perfunctory analysis at best,[17] much of it ignoring that fact that if *lack* of precedent were binding the law neither would nor could evolve and the courts' function, to the extent that they could function at all, would be essentially ministerial. The merits of the argument deserve a closer look, and shall receive one now.

"[T]he line between procedure and substance is notoriously difficult to draw." *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 392 (3d Cir.2002). The Supreme Court has held only that something is a rule if it "really regulates procedure,-the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Hanna v. Plumer,* 380 U.S. 460, 464, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8, 13 (1965)(quoting *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14, 312 U.S. 655, 61 S.Ct. 422, 426, 85 L.Ed. 479(1941)). This test amounts to little more than a "statement that a matter is procedural if, by revelation, it is procedural." 19 Wright & Miller § 4509, at 264. However, even this near-tautology is sufficient to establish a violation of the REA in the case at bar.

Fed.R.Civ.P. 23 is clearly a rule under the above definition; it provides a mechanism whereby rights and duties of classes of plaintiffs and defendants may be enforced. The FLSA recognizes two principal substantive rights:[18] the right of employers not to be sued in representative actions, and the right of employees not to have their rights litigated without their knowledge and express consent. As the legislative history makes clear, the FLSA's opt-in requirement is the device by which those rights are secured.

The application of Fed.R.Civ.P. 23 to state classes making claims similar or identical to those made under the FLSA clearly obviates employers' protections against representative actions. The preclusive effect of decisions on the state claims, which prevents anyone swept into a

---

**17.** In the original arbitration case for which the DOL brief was written, the arbitrator ruled that FLSA's opt-in requirements do not apply "in private arbitration when the arbitration agreement and [American Arbitration Association] rules provide for an opt-out class." *Long John Silver's Rest., Inc. v. Cole,* 409 F.Supp.2d 682, 686 (D.S.C.2006). Upon appeal the district court held that, so long as the arbitrator had made a "reasoned award," whether "the Court may have reached a dif-

ferent conclusion—or even that the arbitrator may have made a serious error of law—[was] of no consequence." *Id.* (citations omitted).

**18.** The FLSA also "profoundly affects the substantive rights of the parties" by promoting a smaller and hence less powerful plaintiffs' class than would result from application of Rule 23. *See De Asencio,* 342 F.3d at 310.

Rule 23 class from litigating similar claims under the FLSA *unless he opts out of the Rule 23 class,* likewise destroys employees' rights under the FLSA. In both cases, the very rights created by the amendments to the FLSA are obliterated by operation of Rule 23. The use of Rule 23 to create a combined opt-in/opt-out action based on alleged violations of the FLSA abridges substantive rights, and is therefore forbidden by 28 U.S.C. § 2072(b). *Cf. Chevron USA, Inc. v. Vermilion Parish Sch. Bd.,* 215 F.R.D. 511, 515–16 (W.D.La.2003)(holding that the REA prohibits class certification under Rule 23 where non-compliance with state law notice requirements would otherwise prevent certification, since under those circumstances Rule 23 certification would impermissibly *create* a substantive right).

Further investigation into the substantive/procedural dichotomy yields the same conclusion. A more detailed analysis of the REA must begin with the doctrine of separation of powers. 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, § 4509, at 262–63. There is a strong suggestion that the Supreme Court's rulemaking authority under the REA does not extend to the constitutional limits of federal authority. *Walko Corp. v. Burger Chef Sys., Inc.,* 554 F.2d 1165, 1169 n. 30 (D.C.Cir.1977) (citations omitted); 19 Wright & Miller § 4509, at 261 & n. 10, 262 & n. 11. Instead, the Supreme Court's authority is limited to that necessary to "effectuate important federal policies as defined by Congress." 19 Wright & Miller § 4509, at 263 & n. 12.

As noted above, two such policies are before this Court: that employers should be freed "of the burden of representative actions," *Hoffmann–La Roche,* 493 U.S. at 173, 110 S.Ct. at 488, 107 L.Ed.2d at 490, and "absent individuals [should] not have their rights litigated without their input or

knowledge." *Otto,* 457 F.Supp.2d at 524. The Court reiterates that the application of Rule 23 to this case annihilates both of these intended results; Rule 23 must therefore yield. *See N.C. Shellfish Growers Ass'n v. Holly Ridge Assoc., LLC,* 357 N.C. 1429, 278 F.Supp.2d 654, 667–69 (E.D.N.C.2003)(citing *Friends of the Earth v. Chevron Chem. Co.,* 885 F.Supp. 934 (E.D.Tex.1995); *Pub. Int. Research Group, Inc. v. Struthers–Dunn, Inc.,* Civil Action No. 87–1773, 1988 WL 147639, 1988 U.S. Dist. LEXIS 17182 (D.N.J. Aug.16, 1988))(holding that Fed.R.Civ.P. 68 is "incompatible with the purposes of Congress" in authorizing citizen suits under the Clean Water Act, and that therefore, in such a citizen suit, defendant's offer of judgment pursuant to Fed.R.Civ.P. 68 was "null and void").

Various commentators have examined the distinction between the substantive and the procedural. 19 Wright & Miller § 4509, at 267–68. John Hart Ely has suggested that a substantive right is "a right granted for one or more nonprocedural reasons, for some purpose or purposes not having to do with the fairness or efficiency of the litigation process." *Id.* at 268 & n. 24 (citing John Hart Ely, *The Irrepressible Myth of Erie,* 87 Harv. L.Rev. 693, 724–25 (1974)[hereinafter Ely]). He goes on to urge that if a rule such as a statute of limitations has both substantive and procedural objectives it "must be treated as substantive for purposes of the [REA] and may not be supplanted by the Federal Rules of Civil Procedure." *Id.* at 268–69 & n. 25 (citing Ely at 726); *see also Dixon Ticonderoga Co. v. Estate of O'Connor,* 248 F.3d 151, 160–61 (3d Cir.2001)(holding that statutes of limitations are substantive for the purposes of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Ely also finds that "immunizing laws" are substantive. 19 Wright & Miller § 4509, at 266 n.

23 (citing Ely at 726). He notes that in such laws deterrence is subsumed by the "more important goals [to be] served by immunization of liability." *Id.* at 267 n. 23 (citing Ely at 726). His lodestone is whether the law's " 'greater' goal to which interests in deterrence and compensation are subordinated" is merely "a procedural goal concerned only with the most sensible way to manage a litigation process." *Id.* If so, the law is procedural and may be preempted by the Federal Rules of Civil Procedure; if not, it is substantive and the Rules must defer to the law. *Id.* at 268–71.

At least one subsequent commentator has argued for an even more inclusive definition. *Id.* at 269 & nn. 26–27 (citing Wellborn, *The Federal Rules of Evidence and the Application of State Law in the Federal Courts,* 55 Tex. L.Rev. 371, 404 (1977)). However, Professor Ely's definition is more than expansive enough to further illustrate the violation of the REA by the application of Rule 23 in hybrid actions on FLSA-based minimum wage and overtime claims. The FLSA's limitation on employer lawsuits was imposed for the nonprocedural reason that Congress feared grave consequences if such suits were not curtailed. *See De Asencio,* 342 F.3d at 306; 93 Cong. Rec.2, 2,087–89 (1947)(statement by Sen. Donnell)(finding the prospect of unchecked representative employee suits against employers to be "appalling to consider"). The employees' protection against unknowing involvement in litigation was granted for the nonprocedural reason that Congress found representative wage and overtime lawsuits to be "unwholesome." 93 Cong. Rec. 2, 2,182 (1947)(statement by Sen. Donnell). Notably, even the FLSA's opt-in clause itself, which at first blush appears to be merely procedural, must be considered substantive for purpose of the REA since, like a statute of limitations, it has both substan-

tive—the protection of the rights guaranteed by the FLSA—and procedural elements. Finally, to the extent that the opt-in clause can be considered an immunizing law, since it seeks to immunize employers against representative actions and employees against becoming parties to litigation without their knowledge and consent, and since its greater goal is the furtherance of Congressional policies rather than just the management of the litigation process, it is substantive for that reason as well under Professor Ely's analysis. As substantive law, it may not be abridged or modified, let alone repealed, by operation of a mere rule. *See Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 27 n. 5, 108 S.Ct. 2239, 2242 n. 5, 101 L.Ed.2d 22 n. 5 (1988)(citing *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)) (holding that "where the applicability of a [rule] is in question," the rule "must be measured against the statutory requirement[s] of the Rules Enabling Act . . .").

However the distinction between substantive and procedural is made, it is prudent to recall that the purpose of the REA is to allow the creation of "a uniform and rational system of practice and procedure in the federal court." 19 Wright & Miller § 4509, at 270. Incidental violation of litigants' substantive rights will be tolerated "if reasonably necessary to maintain the integrity" of that system. *Burlington Northern R. Co. v. Woods,* 480 U.S. 1, 5, 107 S.Ct. 967, 970, 94 L.Ed.2d 1, 7 (1987) (citations omitted). There is also a rebuttable presumption of a Rule of Civil Procedure's validity. 19 Wright & Miller § 4509, at 271.

Acknowledgment that Rule 23 cannot be used in tandem with the FLSA's opt-in rule in hybrid suits based on essentially identical state and FLSA claims threatens neither the uniformity nor integrity of the Federal Rules of Civil Procedure. It merely carves out an exception that can

and should be applied with absolute consistency in a situation that was overlooked when Rule 23(b)(3) and (c)(2)(B) were promulgated,[19] and which did not become critically important until the enaction of the current 28 U.S.C. § 1332(d) in 2005.[20] *See* 28 U.S.C.A. § 1332 (2006) note (Effective

and Applicability Provisions). Allowing the prosecution of hybrid lawsuits on the same claims goes far beyond the merely incidental violation of litigants' rights—instead it expunges them.[21] Rule 23 "must be interpreted with fidelity to the Rules Enabling Act...." *Amchem,* 521 U.S. at

---

19. Fed.R.Civ.P. 23(b)(3), which alone allows class members to opt out, and under which Plaintiffs seek to prosecute their state claims in the instant action, was adopted in 1966. *Amchem,* 521 U.S. at 614–15, 117 S.Ct. at 2245–46, 138 L.Ed.2d at 707–08. The "explosion" of hybrid lawsuits involving both state and FLSA claims is a much more recent phenomenon. Linthorst & Rosenblatt; Lampe & Rossman at 311; *see also* Joseph E. Tilson & Jeremy J. Glenn, *The FLSA: Emerging Trends in Wage and Hour Litigation,* 746 PLI/Lit 571, 575 (stating that "[t]he 21st century may prove to be a new beginning" for the FLSA). Indeed, between 2000 and 2003 the number of collective action suits on wage and hour claims under the FLSA "rose by 70 percent," while the "number of employment discrimination class actions filed in 2003 was 8 percent *lower* than in 2000." Lampe & Rossman at 311 (emphasis in original). In fact, in 2003 the number of FLSA collective actions filed in federal court outnumbered federally-filed class actions for employment discrimination. Finkel at 159–60. The Court finds it unreasonable to impute to the Rules Advisory Committee, the Supreme Court, or the Congress sufficient prescience to support an inference that over thirty years before the fact they anticipated the burgeoning litigation of which the case *sub judice* is a part, let alone Rule 23(b)(3)'s effect thereon.

20. At a time when the federal courts had only supplemental jurisdiction over the state law claims, the *De Asencio* analysis allowed the avoidance of conflict without the necessity of ever reaching its roots. *See De Asencio,* 342 F.3d at 311–13; *Lehman,* 2007 WL 2768519 at * 4, 2007 U.S. Dist. LEXIS 69648, at *13.

21. It also raises possible due process issues. "[A] chose in action is a constitutionally recognized property interest...." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 807, 105 S.Ct. 2965, 2972, 86 L.Ed.2d 628, 639 (1985) (citation omitted). No person may be deprived of such an interest without due process of law. U.S. Const. amend. V, amend XIV § 1. Since a final judgment in a class or

collective action binds all the parties, it will "extinguish the chose in action forever through res judicata." *Shutts,* 472 U.S. at 807, 105 S.Ct. at 2972, 86 L.Ed.2d at 639. At least some process is therefore due to protect the potential plaintiffs' rights. *Shutts,* 472 U.S. at 811–12, 105 S.Ct. at 2974, 86 L.Ed.2d at 642.

Due process is a "flexible" concept calling only "for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). Those demands are different for opt-in and opt-out classes. Once Rule 23 certification occurs, "the claimed members of the class [stand] as parties to the suit until and unless they receive[ ] notice thereof and choose not to continue." *Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 550–51, 94 S.Ct. 756, 765, 38 L.Ed.2d 713, 725 (1974). Conversely, in an opt-in action no one who does not opt in is a party to the suit. Put another way, absent class members in a Rule 23 action are bound by the judgment; absent class members in a FLSA action are not, properly speaking, class members at all and therefore cannot be bound. *See Lusardi v. Lechner,* 855 F.2d 1062, 1070 (3d Cir.1988) (citation omitted)(erring, however, in stating that the FLSA opt-in requirement was imposed in 1938; it was, as discussed above, added in 1947).

In an opt-out action, due process requires notice "reasonably calculated ... to apprise interested parties," an "opportunity to be heard," an opportunity to opt out, and that "the named plaintiff at all times adequately represent the interests of the absent class members." *Shutts,* 472 U.S. at 812, 105 S.Ct. at 2974, 86 L.Ed.2d at 642. The due process rights of putative opt-in class members, however, are protected by the opt-in requirement itself. *Lusardi,* 855 F.2d at 1070.

In *Shutts,* the Court identified three classes of plaintiffs: those who were unlikely to sue or opt into a lawsuit due to either the small size of their claims or their lack of sophistica-

629, 117 S.Ct. at 2252, 138 L.Ed.2d at 716. If 28 U.S.C § 2072(b) has any meaning at all, Rule 23's thoroughgoing abrogation of statutorily secured rights must rebut its presumption of validity as applied to hybrid actions involving FLSA claims.

**Conclusion**

Since Congress did create substantive rights under the FLSA, and since Rule 23 abridges and modifies those rights to the point of extinction, the Court finds that 28 U.S.C.2072(b) prohibits the prosecution in the same action of state law minimum wage and overtime class actions under Fed.R.Civ.P. 23 and collective actions under the FLSA, where the state law claims merely parallel those made under the

tion; those whose claims were of sufficient size that they had probably retained counsel prior to certification and "should be fully capable of exercising [their] right[s] to opt out"; and "the somewhat rare species of class member who is unwilling to execute an 'opt out' form, but whose claim is nonetheless so important that he cannot be presumed to consent to being a member of the class by his failure to do so." *Shutts*, 472 U.S. at 813–14, 105 S.Ct. at 2975, 86 L.Ed.2d at 643. The *Shutts* Court found the first class's interest too small to require more process; the second class's interest well enough protected by its members not to require more process, and the third class to be too uncommon to require more process, and concluded that the Constitution did not require the "sacrifice [of] the obvious advantages in judicial efficiency resulting from the 'opt out' approach for the protection of the *rara avis* " of the third category. *Shutts*, 472 U.S. at 813–14, 105 S.Ct. at 2975, 86 L.Ed.2d at 643.

The *rara avis* of the opt-out action is the entire aviary in an opt-in lawsuit; a putative opt-in class member's consent can never be assumed. *Shutts*, by authorizing notice by first-class mail rather than requiring personal service tacitly acknowledged that at least some absent opt-out class members' rights will be adjudicated without their knowledge, let alone consent. *See Shutts*, 472 U.S. at 811–12, 105 S.Ct. at 2974, 86 L.Ed.2d at 641; *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318–19, 70 S.Ct. 652, 660, 94 L.Ed. 865, 875–76 (1950). Conversely, regardless of the means of notice, no part of an action can touch potential opt-in class members' rights without both their knowledge and affirmative consent.

Potential plaintiffs in an opt-in action, who are not even before the court without their consent, are clearly afforded greater due process protections than absent opt-out class members, who are parties upon certification of the class unless they opt out. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 634–35 (3d Cir.1996), *aff'd*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)(suggesting that due process concerns could be minimized in Fed.R.Civ.P. 23 settlement classes "via [amendment creating] *opt-in* classes, or ... classes with *greater* opt-out rights")(emphasis added). Indeed, the question presented in *Shutts* was whether, under the facts of the case, due process required the additional protection afforded by an "opt in" procedure. *Shutts*, 472 U.S. at 811, 105 S.Ct. at 2974, 86 L.Ed.2d at 641. Moreover, the government interest in promoting lawsuits which are only economically feasible through the "aggregation of small individual claims" that informs *Shutts*, 472 U.S. at 812–13, 105 S.Ct. at 2975, 86 L.Ed.2d at 642, is far less of a factor in a FLSA action and, in fact, the FLSA's opt-in provision was intended to limit the scope and number of employee suits. Since the interests of both potential opt-in and opt-out plaintiffs in their causes of action are similar— although the putative FLSA plaintiff does have the added interest of avoiding involvement in a suit without his express consent— the difference in process between the two regimes is due to the very different government policies that underlie, for example, 29 U.S.C. § 216(b) and Fed.R.Civ.P. 23(b)(3).

In the case *sub judice*, certification of both the state and FLSA claims would, by allowing settlement of the opt-out state claims to preclude claims made under the FLSA, obviate the stronger due process protections that apply to the opt-in class. That would deprive parties who would not even be before the Court without their consent under the FLSA of important due process protections and substitute the weaker protections of Fed.R.Civ.P. 23. That is something this Court will not do.

FLSA.[22] That alone is sufficient ground to require dismissal of counts 4, 5, 7, 8 and 9 of the SAC. Counts 1 through 3 of the SAC are pleaded only under the FLSA and therefore do not implicate Rule 23. Count 6 has been dismissed with prejudice since there is no private remedy available for the wrong alleged. The Court lacks sufficient information regarding Count 10 to allow it to determine the impact, if any, of the REA on its viability, and therefore withholds any ruling on that basis. Count 10 is nonetheless dismissed in part and certification is denied for the reasons given in the Court's conflicts analysis, *supra.*

### 3. 29 U.S.C. § 216(b) review

To maintain a collective action under 29 U.S.C. § 216(b), there must be a showing that the members of the plaintiff class are "similarly situated." 29 U.S.C. § 216(b). The term is not defined by statute, the Supreme Court, or the Third Circuit, but district courts in the Third Circuit have adopted a "two-stage test" in making their determinations. *See Villanueva–Bazaldua v. TruGreen Ltd. Partners,* 479 F.Supp.2d 411, 414 (D.Del.2007)(citing *Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493 (D.N.J.2000)). In the first, or notice stage, at which the Court presently finds itself, "the court determines whether notice should be given to potential class members." *Villanueva–Bazaldua,* 479 F.Supp.2d at 414–15 (citations omitted); *see also Hoffmann–La Roche,* 493 U.S. at 172–74, 110 S.Ct. at 487–88, 107 L.Ed.2d at 489–91 (authorizing "court involvement in the notice process" so long as the court is "scrupulous to respect judicial neutrality"); 7B Wright & Miller § 1807, at 487 & n. 48. This initial, conditional approval and authorization of notice allows the Court, by analysis of the responses of the potential members of the collective action, to "determine (1) the contour and size of the group ... and (2) if the members as described in the pleadings are 'similarly situated.'" 7B Wright & Miller § 1807, at 488–89.

■ Preliminary certification is contingent upon a showing of "common facts among the parties' claims" or a "common policy of discrimination that affects all the collective members." *Id.* at 489–90 & n. 52. A "very lenient burden of proof" applies. *Id.* at 488. Some courts require mere allegations, while others, including those of this district, require a "modest factual showing." *Brothers,* 2007 WL 965835 at *6, 2007 U.S. Dist LEXIS 24326, at *19–*20. This Court has seen no factual showing whatsoever in the instant case. Defendant has, however, effectively stipulated to the common policy of not paying overtime to the potential plaintiffs in the collective action. *See* Document No. 75; Document No. 77 pp. 8–9; Document No. 80–7 p. 3.

### Conclusion

The Court finds, based on Defendant's *de facto* stipulations, that there are suffi-

---

**22.** The Court reserves decision on the question of whether, at least under its Rules Enabling Act analysis, it would certify state law claims if the certification were limited to parties who had already opted into a parallel FLSA collective action. The Third Circuit has not "necessarily preclude[d]" such dual certification of FLSA and supplemental state law claims, *De Asencio,* 342 F.3d at 312 n. 18 (citation omitted), and this Court does not rule out the possibility that there may be some set of circumstances under which the substantive rights afforded both employers and employees by the FLSA would not be modified by operation of Rule 23, so long as the Rule 23 class was composed solely of the FLSA collective action members. The Court notes, however, that such a certification would first require the Court to decide another matter on which it has reserved decision in this opinion, namely whether, for claims within the four corners of the FLSA, state remedies are in fact preempted.

cient grounds to warrant preliminary certification, and preliminary certification only, of the collective action class. The Court will therefore authorize the sending of notice to the potential collective action members. However, since there will be no Rule 23 component to the action, the proposed notice, Document No. 77, Exhibit 1 *et seq.*, will require substantial revision. The Court therefore orders the Parties to prepare a new notice, addressing only the FLSA claims, for its review.

### ORDER

**AND NOW,** this 17th day of December, 2007, after considering the Parties' Amended Joint Motion to Amend Complaint and for Preliminary Approval of Class Action Settlement, (Document No. 77), it is **HEREBY ORDERED** that:

1. Plaintiffs' Motion to File a Second Consolidated Amended Complaint ("SAC") is **GRANTED;**

2. Defendants need not serve any answer to the SAC;

3. Parties' Motion for Preliminary Collective Action Class Certification of Counts One, Two and Three of the SAC pursuant to 29 U.S.C. § 216(b) is **GRANTED** for purposes of notice to the potential collective action members only;

4. Parties' Motion for Preliminary Class Action Certification of Counts Four, Five, Seven, Eight, and Nine is **DENIED,** and those counts are **HEREBY DISMISSED;**

5. Parties' Motion for Preliminary Class Action Certification of Count Six is **DENIED,** and Count Six is **DISMISSED WITH PREJUDICE;**

6. Parties' Motion for Preliminary Class Action Certification of Count Ten of the SAC is **DENIED** and, to the extent that Count Ten contains

claims for common law fraud, those claims are **DISMISSED.**

**IT IS FURTHER ORDERED** that the Parties shall prepare a new notice to putative collective action members, and that said notice shall be approved by the Court prior to its distribution.