PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-1684 & 11-1685
_____

DANIEL KNEPPER,
Appellant at No. 11-1684
(D.C. Civil Action No. 09-cv-2069)

JAMES FISHER, individually
and on behalf of all other persons similarly situated,
Appellant at No. 11-1685
(D.C. Civil Action No. 10-cv-1865)

v.

RITE AID CORPORATION;
ECKERD CORPORATION, d/b/a Rite Aid
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(Honorable John E. Jones III)
_____

Argued January 12, 2012

Before:  SCIRICA, RENDELL and SMITH, *Circuit Judges*.

(Filed: March 27, 2012)

PETER D. WINEBRAKE, ESQUIRE (ARGUED)
R. ANDREW SANTILLO, ESQUIRE
The Winebrake Law Firm, LLC
715 Twining Road, Suite 211
Dresher, Pennsylvania 19025

ROBERT E. DeROSE, II, ESQUIRE
Barkan Meizlish, LLP
360 South Grant Avenue
P.O. Box 1989
Columbus, Ohio 43215

SETH R. LESSER, ESQUIRE
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
        Attorneys for Appellants

PATRICK G. BRADY, ESQUIRE (ARGUED)
SUZANNE K. BROWN, ESQUIRE
JOHN M. O'CONNOR, ESQUIRE
CLARA H. RHO, ESQUIRE
Epstein Becker & Green, P.C.
One Gateway Center
Newark, New Jersey 07102

2

BRIAN P. DOWNEY, ESQUIRE
Pepper Hamilton LLP
100 Market Street, Suite 200
P.O. Box 1181
Harrisburg, Pennsylvania 17108-1181
          Attorneys for Appellees,
          Rite Aid Corporation and
          Eckerd Corporation d/b/a Rite Aid


DANIEL E. TURNER, ESQUIRE
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
191 Peachtree Street, N.E.
Suite 4800
Atlanta, Georgia 30303
          Attorney for Appellee,
          Rite Aid Corporation


LAURA M. MOSKOWITZ, ESQUIRE (ARGUED)
United States Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W., Room N-2716
Washington, D.C. 20210
          Attorney for *Amicus Curiae*-Appellant,
          Secretary of the United States Department of Labor


DAVID A. BORGEN, ESQUIRE
Goldstein, Demchak, Baller, Borgen & Dardarian
300 Lakeside Drive, Suite 1000
Oakland, California 94612

Attorney for *Amici Curiae*-Appellants,
The National Employment Lawyers Association
Comité de Apoyo a los Trabajadores Agrícolas
Cornell Law School Labor Law Clinic
Friends of Farmworkers, Inc.
JUNTOS
National Employment Law Project
National Lawyers Guild Labor and
      Employment Committee
Working Hands Legal Clinic

—————————————

OPINION OF THE COURT

—————————————

SCIRICA, *Circuit Judge*.

This case involves a putative conflict between an opt-out Fed. R. Civ. P. 23(b)(3) damages class action based on state statutory wage and overtime laws that parallel the federal Fair Labor Standards Act (FLSA) and a separately filed opt-in collective action under 29 U.S.C. § 216(b) of the FLSA. Both suits allege violations arising from the same conduct or occurrence by the same defendant. At issue is whether federal jurisdiction over the Rule 23 class action based solely on diversity under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), is inherently incompatible with jurisdiction over the FLSA action, and whether the FLSA preempts state laws that parallel its protections.

4

## I.

Plaintiff James Fisher and former plaintiff Robert Vasvari[1] were assistant store managers at Rite Aid stores in Maryland and Ohio respectively. In June 2009, both joined a nationwide opt-in action under 29 U.S.C. § 216(b) of the FLSA in the Middle District of Pennsylvania. *Craig v. Rite Aid Corp., et al.*, No. 4:08-cv-02317-JEJ (M.D. Pa.). The suit sought back pay for alleged misclassification of assistant managers as overtime-exempt under § 207 of the FLSA.

In July 2009, Fisher initiated a Fed. R. Civ. P. 23(b)(3) class action lawsuit in the District of Maryland on behalf of all Maryland Rite Aid assistant managers, seeking damages for alleged misclassification as overtime-exempt under the Maryland Wage Payment and Collection Law and Maryland, Md. Code Ann. Lab. & Empl. §§ 3-501 to -509, and the Maryland Wage and Hour Law (MWHL), Md. Code Ann. Lab. & Empl. §§ 3-401 to -428.[2] The District of Maryland dismissed the Payment and Collection claims with prejudice,

---

[1] Mr. Vasari died and was replaced by plaintiff Daniel Knepper, Order Substituting Party, *Vasvari v. Rite Aid Corp.*, No. 1:09-CV-02069 (JEJ) (M.D. Pa. Dec. 3, 2010), but all claims and allegations remained unchanged.

[2] The MWHL parallels the overtime requirements set forth in the FLSA, requiring the payment of overtime for work over forty hours a week unless the employee falls within certain exemptions, including if the employee "is exempt from the overtime provisions of the federal [Fair Labor Standards] Act." Md. Code Ann. Lab. & Empl. § 3-420.

5

ruling the statute does not govern claims to overtime pay, but dismissed the claim under the Wage and Hour law without prejudice under the "first-filed" rule, deferring to the Middle District of Pennsylvania. *Fisher v. Rite Aid Corp.*, No. RDB-09-1909, 2010 WL 2332101 (D. Md. June 8, 2010). Fisher then refiled his class action in the Middle District of Pennsylvania, asserting jurisdiction based solely on diversity of citizenship under CAFA, 28 U.S.C. § 1332(d).

Also in July 2009, Vasvari initiated a Rule 23(b)(3) class action in the District of Northern Ohio seeking damages for alleged misclassification as overtime-exempt under the Ohio Minimum Fair Wage Standards Act (OMFWSA), O.R.C. §§ 4111.01-4111.17.[3] Jurisdiction was based solely on diversity of citizenship under 28 U.S.C. § 1332(d). The case was transferred to the Middle District of Pennsylvania based on the forum selection clause in Vasvari's employment contract. Stipulated Order Concerning Transfer to the Middle District of Pennsylvania, *Vasvari v. Rite Aid Corp.*, No. 4:09-cv-1699 (N.D. Ohio Oct. 19, 2009).

On February 16, 2011, the District Court for the Middle District of Pennsylvania, noting that "each action shares the same determinative issue," published nearly

---

[3] The Ohio Minimum Fair Wage Standards Act also parallels the overtime requirements of the FLSA, requiring overtime pay for work over forty hours a week "subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938,' [§§] 207, 213, as amended." O.R.C. § 4111.03(a) (citation omitted).

6

identical opinions in both cases granting defendants' motion to dismiss on the pleadings under Fed. R. Civ. P. 12(c). *Fisher v. Rite Aid Corp.*, 764 F. Supp. 2d 700, 704 n.2 (M.D. Pa. 2011); *Knepper v. Rite Aid Corp.*, 764 F. Supp. 2d 707, 710 n.4 (M.D. Pa. 2011). It found that the Ohio state law provisions at issue were not preempted because the FLSA includes a "savings clause" establishing Congress's intent not to preempt state law.[4] *Knepper*, 764 F. Supp. 2d at 712. But it ruled the Rule 23 opt-out class actions based on state employment laws paralleling the FLSA were "inherently incompatible" with the opt-in procedure provided by the FLSA, which was "specifically designed to prevent litigation through representative action" and "expresses Congress's intent to . . . eliminat[e] representative (i.e., opt-out) actions." *Id*. at 714 (internal quotation marks omitted); *Fisher*, 764 F. Supp. 2d at 706 (internal quotation marks omitted). It reached this conclusion even though the Rule 23 class actions were free-standing cases brought under CAFA diversity jurisdiction rather than "combined" actions invoking supplemental jurisdiction, reasoning that "denying a plaintiff the opportunity to litigate a claim in one action, but allowing the claim to proceed in an action that only differs from the original by docket number, does not vindicate the purposes behind application of the doctrine in the first place." *Fisher*, 764 F. Supp. 2d at 706; *Knepper*, 764 F. Supp. 2d at 713. Based on this ruling that inherent incompatibility barred the

---

[4] The District Court did not discuss preemption of the Maryland employment law in *Fisher*, but its logic would encompass that action as well.

suit, the District Court declined to address the further objection that Rule 23 certification would implicate the Rules Enabling Act. *Fisher*, 764 F. Supp. 2d at 704; *Knepper*, 764 F. Supp. 2d at 714.

Plaintiffs appealed. Both actions share the same legal issue and present no meaningful factual differences. We discuss them together.[5]

**II.**

29 U.S.C. § 216(b) provides a private right of action to recover for violations of the FLSA, including a suit by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." In 1947, Congress amended this provision to require that a plaintiff in a FLSA suit "give[] his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Portal-to-Portal Act of 1947, Ch. 52, § 5(a), 61 Stat. 84, 87 (codified at 29 U.S.C. § 216(b)). Because the purpose of this amendment and its implications for federal opt-out class actions based on state law are in dispute, we consider its history in detail.

Congress enacted the FLSA in 1938. Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060 (codified at 29 U.S.C. §§ 201-219). The law sought to protect workers,

---

[5] We exercise jurisdiction over this appeal under 28 U.S.C. § 1291. The District Court exercised jurisdiction under 28 U.S.C. § 1332(d).

8

particularly non-unionized workers, by establishing federal minimum wage, maximum hour, and overtime guarantees that could not be avoided through contract. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945)). As originally enacted, the law provided for enforcement by the Secretary of Labor or through private actions that could be brought "in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated." FLSA, § 16(b), 52 Stat. at 1069.

From 1944 to 1947, the Supreme Court decided three cases determining that on-the-job travel time constituted "work" within the meaning of the FLSA and therefore contributed to the maximum working hours for the calculation of overtime. *Tenn. Coal, Iron, & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944); *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161 (1945); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). While the first two cases were limited to underground mining, the third extended the concept of "portal-to-portal" pay to a large factory, determining that "the time necessarily spent by the employees in walking to work on the employer's premises . . . was working time within the scope" of the FLSA. *Anderson*, 328 U.S. at 691.

Workers responded to the *Mt. Clemens* decision by

9

initiating thousands of § 16(b) FLSA suits seeking back pay for "portal-to-portal" violations.[6]  Nearly all the suits filed under § 16(b) were brought by unions.[7]  These suits were "representative" in the sense that, as authorized by the statute, they were initiated by third-party union officials as representatives of the employees, the real parties in interest. But despite the broad language allowing suits on behalf of those "similarly situated," these were not opt-out class actions analogous to suits under modern Rule 23, which did not exist at the time.[8]  Instead, case law on § 16(b) held that plaintiffs

---

[6] By January 1947, 1,913 claims had been filed, with an aggregate amount sought approaching $6 billion.  S. Rep. No. 80-48, at 2 (1947).

[7] *See Regulating the Recovery of Portal-to-Portal Pay, and For Other Purposes: Hearings Before Subcomm. No. 2 of the H. Comm. on the Judiciary*, 80th Cong. 166 (1947) (hereinafter *Hearings*)  (testimony of Lee Pressman, general counsel of the CIO) (stating he knew of no suits filed by unorganized workers); *see also* S. Rep. No. 80-48, at 12 ("Evidence demonstrates conclusively the existence of a very close connection between many of the suits and certain CIO affiliates.").  All thirteen pages of the Senate report on "the Portal-to-Portal Lawsuits" addressed allegations of extensive union involvement.  S. Rep. No. 80-48, at 12-25.

[8] The original version of Rule 23 provided three categories of class action: "true," involving 'joint, common, or secondary rights'"; "hybrid," involving "'several' rights related to 'specific property'"; and "spurious," involving "'several' rights affected by a common question and related to common

10

must affirmatively join in a representative action to recover, analogizing such suits to "spurious" class actions available under Rule 23(a)(3) at the time.[9] Those filing suits shared

___

relief." Fed. R. Civ. P. 23 advisory committee's note, *reprinted in* 39 F.R.D. 69, 98 (1966). Summarizing the earlier rule, the Advisory Committee on Civil Rules stated, "[J]udgments in 'true' and 'hybrid' class actions would extend to the class (although in somewhat different ways); the judgment in a 'spurious' class action would extend only to the parties including intervenors." *Id.* Because almost all modern class actions arise from a common question but seldom involve joint rights or a common property, under the pre-revision Rule 23 scheme they would be categorized as "spurious" class actions and therefore require affirmative joinder for recovery.

[9] A comprehensive survey of the case law on the question of the classification of § 16(b) actions appears in *Pentland v. Dravo Corp.*, 152 F.2d 851, 853-56 (3d Cir. 1945). The court there concluded that these actions were "spurious class actions" requiring the joinder of plaintiffs, suggesting that it would be a "startling result to find that every fellow employee was bound by the estoppel of that judgment when he came to sue the employer." *Id.*; *see also Lusardi v. Lechner*, 855 F.2d 1062, 1070-71 (3d Cir. 1988) (observing that § 16(b) of the FLSA and the original Rule 23 of the Federal Rules were both enacted in 1938, and that, "[u]nder both the statute and the rule, class actions in which absent members were not bound by the judgment were recognized.") This conclusion was in accord with nearly all the scholarly commentary from the era.

this understanding. *See Hearings* at 175 (statement of CIO counsel Lee Pressman) (testifying that in his view, "a suit under the wage-and-hour law, if you recover, the judgment runs only to the extent that there are individual plaintiffs—that is, individual men who signed authorization cards"); *see also* Marc Linder*, Class Struggle at the Door: The Origins of the Portal-to-Portal Act of 1947,* 39 Buff. L. Rev. 53, 172 (1991). But one court suggested that the FLSA might permit plaintiffs to join after judgment had been reached—a procedure that later became termed "one-way" intervention, where plaintiffs could sit out an action, choosing to opt in and be bound by the judgment only after a favorable outcome.[10] *Pentland v. Dravo Corp.*, 152 F.2d 851, 856 (3d Cir. 1945).

Congress responded to the *Mt. Clemens* decision and

*See, e.g.,* Albert B. Gerber & S. Harry Galfand, *Employees' Suits Under the Fair Labor Standards Act*, 95 U. Pa. L. Rev. 505, 508-09 (1947); Rufus G. Poole, *Private Litigation under the Wage and Hour Act*, 14 Miss. L. J. 157, 165 (1942); James A. Rahl, *The Class Action Device and Employee Suits Under the Fair Labor Standards Act*, 37 Ill. L. Rev. 119, 122-23 (1942).

[10] This procedure was abolished with the revision of Rule 23 in 1966. *See* Fed. R. Civ. P. 23 advisory committee's note, 39 F.R.D. at 105 ("Under proposed subdivision (c)(3), one-way intervention is excluded") (citing *Pentland*, 152 F.2d at 856); *see also Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 545-47 (1974) (noting the "considerable criticism" of one-way intervention, and the intent of the 1966 amendments to eliminate the practice).

the flood of lawsuits by enacting the Portal-to-Portal Act of 1947, Ch. 52, 61 Stat. 84. The law sought to staunch the proliferation of suits and remedy what Congress perceived to be "wholly unexpected liabilities, immense in amount and retroactive in operation" by statutorily reversing judicial interpretations of the FLSA. *Id*. § 1. In an effort to address the threat of "excessive and needless litigation and champertous practices," *id.*, Section 5 of the law banned what it termed "representative actions." It amended § 16(b) to read:

> Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* § 5(a) (codified at 29 U.S.C. § 216(b)). As the Supreme Court later characterized this modification, "In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

The *Sperling* Court cited legislative history that further

13

illuminates the meaning of the provision. Senator Donnell, chairman of the drafting subcommittee, offered an exposition of § 5(a) and its purported remedy of the deficiencies of § 16(b) during Senate debates. 93 Cong. Rec. 2,182 (1947). He observed that § 16(b) had allowed two types of actions. "First, a suit by one or more employees, for himself and all other employees similarly situated. That I shall call for the purpose of identification a collective action, a suit brought by one collectively for himself and others. . . . In [this] case an employee . . . can sue for himself and other employees. We have no objection to that." *Id.* What Senator Donnell objected to was the "second class of actions," which he deemed "a representative action, as distinguished from a collective action." *Id.* In these cases, "an agent or representative who may not be an employee of the company at all can be designated by the employee or employees to maintain an action on behalf of all employees similarly situated." *Id.* He characterized this class of cases as those "in which an outsider, perhaps someone who is desirous of stirring up litigation without being an employee at all, is permitted to be the plaintiff in the case." *Id.* Senator Donnell went on to explain the purpose of the requirement that each employee give his consent in writing to become a plaintiff. This, he argued, was a

> wholesome provision, for it is certainly unwholesome to allow an individual to come into court alleging that he is suing on behalf of 10,000 persons and actually not have a solitary person behind him, and then later on have 10,000 men join in the suit, which was not

14

> brought in good faith, was not brought by a
> party in interest, and was not brought with the
> actual consent or agency of the individuals for
> whom an ostensible plaintiff filed the suit.

*Id.* [11]

These statements, taken together with the historical context, elucidate the congressional purpose behind § 216(b). First, the primary concern of Congress was "representative" actions as Senator Donnell defined them, and of the sort that had dominated the portal-to-portal litigation—that is, instances where union leaders allegedly "stirred up" litigation without a personal stake in the case. As a contemporary commentator stated, "The banning of representative actions for unpaid wages is an obvious device to prevent the maintenance of employee suits by labor unions." Note, *Fair Labor Standards Under the Portal to Portal Act*, 15 U. Chi. L. Rev. 352, 360 (1948).

Second, Congress intended the requirement of written consent to bar plaintiffs from joining a collective action well after it had begun, particularly when the original statute of

---

[11] Sen. Donnell also stressed that the revised § 5(a) would prevent plaintiffs opting in after the original statute of limitations had run. The Senate Report reiterated this view, stating that the new language ensured that "the commencement of the collective action does not stop the running of the statute of limitations for those who later become parties to the action." S. Rep. No. 80-48, at 49.

15

limitations had run and when those opting in would not be bound by an adverse decision. These requirements abrogated the *Pentland* decision and foreclosed the possibility of one-way intervention in FLSA actions. *See Fair Labor Standards Under the Portal to Portal Act*, *supra*, at 360 & n.60.

In sum, the enforcement scheme in the Portal-to-Portal Act largely codified the existing rules governing spurious class actions, with special provisions intended to redress the problem of representative actions brought by unions under earlier provisions of the FLSA and the problem of "one-way" intervention. Absent from the debates was any mention of opt-out class actions—an unsurprising fact, since the FLSA had not been interpreted to permit such suits. The FLSA did not become relevant to opt-out class actions until after the revision of Rule 23 and the creation of modern Rule 23(b)(3) in 1966. During that process, the Advisory Committee on Civil Rules disclaimed any intention for the new opt-out rule to affect 29 U.S.C. § 216(b). Fed. R. Civ. P. 23 advisory committee's note, *reprinted in* 39 F.R.D. 69, 104 (1966). The effect of this grandfathering was to convert what had been an affirmative grant beyond the limited provisions of pre-revision Rule 23 into "a limitation upon the affirmative permission for representative actions that already exists in Rule 23 of the Federal Rules of Civil Procedure. (That is to say, were it not for this provision of § 216(b) the representative action could be brought even without the prior consent of similarly situated employees.)" *Sperling*, 493 U.S. at 176 (Scalia, J., dissenting) (emphasis removed).

## III.

We exercise plenary review of a judgment under Rule 12(c). *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1998)). We grant the motion only if, viewing all the facts in the light most favorable to the non-moving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law. *Id.* Here, there are no disputed questions of fact, and we exercise *de novo* review over the District Court's determinations on the legal questions of inherent incompatibility and preemption. *Roth v. Norfalco LLC*, 651 F.3d 367, 374 (3d Cir. 2011).

## A.

29 U.S.C. § 216(b) provides:

An action to recover the liability prescribed in either of the preceding sentences [for failure to pay statutorily required overtime or wages under the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become

17

> such a party and such consent is filed in the court in which such action is brought.

Courts have concluded that the plain language of this provision bars opt-out class actions to enforce the provisions of the FLSA under the well-established principle that, where Congress has provided a detailed remedy, other remedies are unavailable. *See, e.g., Kendall v. City of Chesapeake, Va.*, 174 F.3d 437, 439-43 (4th Cir. 1999); *Lusardi v. Lechner*, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988); *Lervill v. Inflight Motion Pictures, Inc.*, 343 F. Supp. 1027 (N.D. Cal. 1972). This limitation applies to other federal laws that incorporate the FLSA's enforcement mechanism, primarily the Age Discrimination in Employment Act, 29 U.S.C. § 621(b). *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975).

The concept of inherent incompatibility seeks to extend this logic to state employment-law claims. It arose in the context of dual-filed FLSA opt-in and state law opt-out class actions where the federal court was asked to exercise supplemental jurisdiction over state law claims that paralleled the claims under the FLSA. Some district courts have reasoned that the contrast between an opt-in and opt-out procedure bars the federal courts from hearing such "hybrid" or "combined" actions. *See, e.g., Ellis v. Edward D. Jones & Co.,* 527 F. Supp. 2d 439 (W.D. Pa. 2007); *Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006); *Moeck v. Gray Supply Corp.*, No. 03-1950, 2006 WL 42368

18

(D.N.J. Jan. 6, 2006).[12]  In this case, the District Court applied this reasoning to an independent class action based on state law claims brought under federal diversity jurisdiction.

The concept of inherent incompatibility has not fared well at the appellate level.  Four courts of appeals have rejected its application to dual-filed FLSA and class actions. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247-49 (2d Cir. 2011) ("[W]e agree with the Seventh Circuit that . . . 'the 'conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction.'"); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976-79 (7th Cir. 2011) ("There is ample evidence that a combined action is consistent with the regime Congress has established in the FLSA."); *Wang v. Chinese Daily News*, 623 F.3d 743, 760-61 (9th Cir. 2010), *vacated on other grounds*, 132 S. Ct. 74 (2011)  ("We follow *Lindsay* in concluding that it was within the district court's discretion to exercise supplemental jurisdiction over the [state law] claim in this case."); *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) ("While there is unquestionably a difference . . . between opt-in and opt-out procedures, we doubt that a mere *procedural* difference can curtail section 1367's *jurisdictional* sweep.").

---

[12] The one case cited by the District Court from outside the Third Circuit—*McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574 (N.D. Ill. 2004)—is no longer good law in light of the Seventh Circuit's decision in *Ervin v. OS Rest. Servs., Inc.,* 632 F.3d 971 (7th Cir. 2011).

The most thorough examination of the issue appears in *Ervin*.[13]  There, the Seventh Circuit rejected the lower court's conclusion that the dual-filed action should be dismissed because of inherent incompatibility, suggesting that the district court had "jumped too quickly to congressional intent."  *Ervin*, 632 F.3d at 977.  Examining the text of § 216(b), the court found nothing that suggests that "the FLSA is not amenable to state-law claims for related relief in the same federal proceeding," especially since the FLSA contains an express savings clause.  *Id.*  Nor did the congressional purpose contradict this conclusion, since the Portal-to-Portal

---

[13] Rite Aid seeks to distinguish *Ervin* on the grounds that it arose in the context of a denial of class certification, not a motion to dismiss, and that the Illinois state laws at issue provided greater protection than the FLSA.  But its procedural posture does not distinguish it from this case, since the denial of certification was based primarily on the concept of inherent incompatibility, which *Ervin* unambiguously rejects.  *Ervin*, 632 F.3d at 975; *see id.* at 973-74 ("We conclude that there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA.").  Moreover, the fact that the Illinois laws at issue provided greater protection would be relevant on the question of preemption, since they would then fall within the explicit scope of the FLSA's savings clause.  But the concept of inherent incompatibility is distinct from the issue of preemption and hinges on the contrast between the opt-in and opt-out class procedure, which *Ervin* squarely addressed.

Act was "designed to eliminate lawsuits by third parties (typically union leaders) on behalf of a disinterested employee (in other words, someone who would not otherwise have participated in the federal lawsuit)." *Id*. at 978. An employee who does not opt in to the federal class would receive only the "relief that is prescribed under the law governing her part of the case," which would simply represent the adjudication of state law claims implicit in the concept of supplemental jurisdiction. *Id*.

We agree that the plain text of § 216(b) provides no support for the concept of inherent incompatibility. The provision specifically applies only to actions for violations of "the provisions of section 206 or section 207 of this title" for "unpaid minimum wages" or "unpaid overtime compensation," as well as claims for injunctive relief for retaliation in violation of § 215(a)(3). 29 U.S.C. § 216(b). Moreover, while the law requires each plaintiff to opt in to a suit in writing, by its plain terms this requirement extends only to "any such action"—namely, suits brought under § 216(b). Neither § 216(b) nor any other FLSA provision addresses causes of action for relief under state employment law. The references to state law in the FLSA manifest only congressional intent not to preempt state standards. 29 U.S.C. §§ 207(r)(4), 218(a), 218a, 218c(b)(2).

In the absence of a clear textual mandate, those courts endorsing the concept of inherent incompatibility have reasoned from congressional intent. The District Court here stated:

It is clear that Congress labored to create an opt-in scheme when it created Section 216(b) specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge. To allow [a] Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.

*Fisher*, 764 F. Supp. 2d at 705 (alteration in original) (quoting *Otto*, 457 F. Supp. 2d at 524); *Knepper*, 764 F. Supp. 2d at 712. A similar discussion appeared in *Ellis*, which involved a Rule 23 opt-out action based in part on the OMFWSA filed alongside an FLSA opt-in suit. In determining that the two suits were inherently incompatible, the court examined the "[h]istory and policy" of FLSA opt-in actions and Rule 23 opt-out actions in detail, stressing § 216(b)'s "two-fold purpose of 'limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions.'" *Ellis*, 527 F. Supp. 2d at 443-46 (quoting *Sperling*, 493 U.S. at 173). In support, it cited Senator Donnell's statement, discussed at length above, objecting to suits brought without "the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit." *Id.* (quoting 93 Cong. Rec. 2,182 (1947)) (emphasis removed).

As an initial matter, we question the implementation of perceived congressional intent absent any clear textual or doctrinal basis. "[T]he authoritative statement is the statutory text, not the legislative history . . . . Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005); *see also Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569 (3d Cir. 2002) (noting that, in the event of a "conflict between a statute's plain meaning and its general policy objectives," the conflict should "be resolved in favor of the statute's plain meaning."). As discussed, we do not find § 216(b) ambiguous: it explicitly limits its scope to the provisions of the FLSA, and does not address state-law relief. Because reliance on the remarks of legislators not to supplement, but to supplant the duly enacted statutory text "circumvent[s] the Article I process," *Exxon Mobil*, 545 U.S. at 570, we do not need to go beyond the plain text in interpreting § 216(b).

But even if we regarded § 216(b) as ambiguous—if we entertained the possibility that the phrase "any such action" encompasses actions based on state-law claims that paralleled the protections provided by the FLSA[14]—we are unconvinced

---

[14] This interpretation conflicts not only with the provision's plain text, as discussed, but also with its legislative history. *See* Portal-to-Portal Act of 1947 § 5(b), 61 Stat. at 87 ("The amendment made by subsection (a) of this section [requiring plaintiffs to opt in to FLSA collective actions in writing] shall

23

by Rite Aid's view of the legislative purpose of the Portal-to-Portal Act. There was some concern that plaintiffs could be bound by a decision in a case where they had neither "input [n]or knowledge." But the full legislative record casts doubt on the contention that § 216(b) was intended to "eliminat[e] representative (i.e., opt-out) actions." *Fisher*, 764 F. Supp. 2d at 706; *Knepper*, 764 F. Supp. 2d at 711. The historical evidence establishes that Congress created the opt-in scheme primarily as a check against the power of unions, whose representatives had allegedly manufactured litigation in which they had no personal stake, and as a bar against one-way intervention by plaintiffs who would not be bound by an adverse judgment. Neither purpose speaks to the propriety of an opt-out class action, especially since modern Rule 23 opt-out actions did not exist at the time and had not occurred under the earlier FLSA enforcement scheme.[15] Accordingly,

---

be applicable only with respect to actions commenced under the Fair Labor Standards Act of 1938 . . . .").

[15] One reason for diverging interpretations is the conflation of two different meanings of the word "representative." As Senator Donnell's statement makes clear, he understood a representative action to be one in which "an agent or representative who may not be an employee of the company at all can be designated by the employee or employees to maintain an action on behalf of all employees similarly situated." 93 Cong. Rec. 2,182 (1947). By contrast, although a modern Rule 23 class action is often described as a "representative action" with the named plaintiff as a "class representative," the "representative" must be a member of the

we disagree that certifying an opt-out class based on state employment law contravenes the congressional purpose behind the Portal-to-Portal Act.

Moreover, this approach to congressional intent assumes that the only relevant congressional purpose in this case is that expressed in enacting the Portal-to-Portal Act. But a countervailing congressional purpose can be found in the Class Action Fairness Act, which provides federal jurisdiction over state-law class actions that satisfy its requirements. Rite Aid correctly notes that CAFA does not grant jurisdiction in all cases, providing judges discretionary jurisdiction in some instances, 28 U.S.C. § 1332(d)(3), and barring jurisdiction in others, 28 U.S.C. § 1332(d)(4).[16] But the fact-specific requirements that must be satisfied before these subsections apply demonstrate that Congress did not intend courts to invoke an extratextual supplement outside those exceptions to decline otherwise available jurisdiction. *See Colo. River Water Conservation Dist. v. United States*,

---

class, not a third party without an interest in the litigation. In the context of an employment class action, the class representative must be an employee. A modern Rule 23 class action is analogous to what Senator Donnell dubbed a "collective action," where "an employee . . . can sue for himself and other employees," to which Senator Donnell had "no objection." *Id*.

[16] There is no suggestion by Rite Aid or the District Court that the requirements for CAFA jurisdiction were not satisfied, nor that any basis for denial of jurisdiction exists under § 1332(d)(3) or (4).

424 U.S. 800, 808 (1976) ("When there are statutes clearly defining the jurisdiction of the courts, the force and effect of such provisions should not be disturbed by a mere implication . . . ." (quoting *Rosencrans v. United States*, 165 U.S. 257, 262 (1897)).

Rite Aid also argues our decision in *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), supports the concept of inherent incompatibility. In *De Asencio*, we determined that the trial court had abused its discretion by exercising supplemental jurisdiction over an opt-out class action based on Pennsylvania wage law filed together with an opt-in class action under the FLSA. *Id.* at 307-12. We grounded our decision in the requirements of 28 U.S.C. § 1367(c), particularly the provisions that the district court may decline jurisdiction over a state-law claim when it "raises a novel or complex issue of State law" or when it "substantially predominates" over the federal claim. *Id.* We concluded that the presence of two novel state-law issues, along with the inordinate size of the state-law class, did not satisfy this standard and led us to conclude that supplemental jurisdiction was unavailable because "the federal action is an appendage to the more comprehensive state action." *Id.*

As this account suggests, *De Asencio* is distinguishable, as the Seventh, Ninth, and D.C. Circuits have all concluded. *Ervin*, 632 F.3d at 981 ("*De Asencio* represents only a fact-specific application of well-established rules, not a rigid rule about the use of supplemental jurisdiction in cases combining an FLSA count with a state-law class action."); *Wang*, 623 F.3d at 761; *Lindsay*, 448 F.3d

at 425 n.11. Unlike the state law claims at issue in *De Asencio*, there is no suggestion that the claims under the MWHL and the OMFWSA are novel or complex; Rite Aid's principal objection is that these state claims are too similar to federal claims with which the federal courts are well familiar. Nor does this case present an instance of supplemental jurisdiction, where there is statutory authority to decline jurisdiction in the factual circumstances of *De Asencio*.[17] Here, independent jurisdiction exists over plaintiffs' claims under CAFA, which provides no statutory basis for declining jurisdiction in this instance. For these reasons, we do not believe *De Asencio* supports dismissal.[18]

In sum, we disagree with the conclusion that jurisdiction over an opt-out class action based on state-law claims that parallel the FLSA is inherently incompatible with the FLSA's opt-in procedure. Nothing in the plain text of § 216(b) addresses the procedure for state-law claims, nor, in

---

[17] We do not suggest there is an affirmative bar to supplemental jurisdiction over a dual-filed opt-in/opt-out action, only that such suits must still satisfy the specific statutory requirements of § 1367.

[18] At one point in *De Asencio*, we employed potentially misleading language to describe the legislative history of the Portal-to-Portal Act, suggesting that Congress "changed participation in an FLSA class from 'opt-out' to 'opt-in.'" *De Asencio*, 342 F.3d at 306. Although this dictum played no role in our holding, which was grounded in the specific requirements of 28 U.S.C. § 1367, we correct this misstatement now.

27

our view, does the provision's legislative history establish a clear congressional intent to bar opt-out actions based on state law. We join the Second, Seventh, Ninth, and D.C. Circuits in ruling that this purported "inherent incompatibility" does not defeat otherwise available federal jurisdiction.

**B.**

We next consider whether the FLSA preempts the MWHL and the OMFWSA. The District Court concluded that it does not. Rite Aid disputes this conclusion and urges affirmance of the dismissal on this ground.

Under the Supremacy Clause, state law that "interferes with or is contrary to" federal law is preempted. *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)). State law may be preempted by express congressional language, "by implication from the depth and breadth of a congressional scheme that occupies the legislative field," or "by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001). Two fundamental principles guide our preemption analysis. First, "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Second, when Congress has acted "in a field which the States have traditionally occupied," we presume that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.*

28

The FLSA contains a savings clause, which states, "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter." 29 U.S.C. § 218(a). Because the overtime provisions of the MWHL and the OMFWSA establish the same, rather than higher, protections than the FLSA, they are not expressly preserved by this provision. Nevertheless, the savings clause is relevant to the question of preemption. Express preemption is improper here, as the statute's plain language evinces a clear intent to preserve rather than supplant state law. Moreover, as the District Court noted, the presence of the savings clause undermines any suggestion that Congress intended to occupy the field of wage and hour regulation.

Rite Aid urges that the state laws here constitute an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992), and are impliedly preempted under the principles of conflict preemption. But this proposition is counterintuitive, since it suggests that state enforcement of standards that are identical with those established in the FLSA would somehow conflict with congressional purpose. This would be especially odd where Congress explicitly contemplated dual enforcement of the FLSA. Moreover, a finding of preemption here would bar enforcement of all state wage and hour laws that did not exceed the standards of the FLSA, a significant intrusion on

29

state authority and a reversal of the traditional presumption against preemption, which is particularly strong given states' lengthy history of regulating employees' wages and hours. *See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 330 (1997) (presuming that ERISA did not preempt a state wage law in light of the state's lengthy history of wage regulation); *see also* Daniel V. Dorris, Comment, *Fair Labor Standards Act Preemption of State Wage-and-Hour Law Claims*, 76 U. Chi. L. Rev. 1251, 1275-81 (2009) (arguing that the lengthy and ongoing history of state regulation of wage and hour regulations requires the application of the presumption against preemption to the FLSA). For these reasons, we do not believe the state laws at issue here are impliedly preempted as an obstacle to Congress's purpose.

Rite Aid offers a more refined version of their preemption argument when they suggest that, while the FLSA does not preempt the state-law substantive provisions at issue, the enforcement of the MWHL and the OMFWSA through opt-out class actions conflicts with Congress's intent in enacting § 216(b) and should stand preempted. This argument largely recapitulates the concept of inherent incompatibility, which we have already rejected. The argument fails here because of a flaw in Rite Aid's reasoning—namely, that the opt-out procedure at issue is provided not by state law, but under CAFA, 28 U.S.C. § 1332(d). Because federal law cannot preempt another federal law, and a statute from 1947 cannot impliedly repeal a law from 2005, preemption is inapplicable.

30

The cases cited by Rite Aid do not alter this conclusion. In *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), the Court of Appeals for the Fourth Circuit ruled that plaintiffs' claims under North Carolina's "contract, negligence, and fraud" laws were preempted by the FLSA. But *Anderson* is readily distinguishable because none of the state laws at issue created the substantive rights that had been allegedly violated. Instead, the court noted, the plaintiffs "rely on the FLSA for their rights, and invoke state law only as the source of remedies for the alleged FLSA violations." *Anderson*, 508 F.3d at 193. The court sensibly declined to allow the plaintiffs to use state non-labor laws to enforce the substantive provisions of the FLSA, analogizing their decision to an earlier holding that plaintiffs could not enforce their FLSA rights through a § 1983 action. *Id*. at 193-94 (citing *Kendall*, 174 F.3d 437). By contrast, plaintiffs here do not seek to enforce rights conferred under the FLSA through state-law remedies; they seek instead to enforce rights granted by independent state employment laws through a federal remedy. *See Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816, 819-21 (E.D.N.C. 2008) (holding that plaintiffs' claims under state statutory minimum wage and overtime laws are not preempted under the FLSA because "unlike *Anderson* . . . plaintiffs are not merely using state law to enforce their rights under the FLSA"). We cannot conclude that plaintiffs are doing an "end run" around the requirements of the FLSA simply because state legislatures made the policy decision to track federal standards in

31

enacting their own labor laws.[19]

In sum, there is no evidence that Congress intended the FLSA to preempt the MWHL and the OMFWSA. We will

---

[19] Rite Aid also points to *Ellis,* 527 F. Supp. 2d 439. The *Ellis* court reasoned that the state wage and hour laws at issue in that case, including the OMFWSA, were not included within the scope of the FLSA's savings clause because they did not provide greater protection than the FLSA, and that their enforcement through a Rule 23 class action would "essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement." *Id.* at 449-52 (quoting *Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006)).

We find *Ellis* unconvincing on this issue. The *Ellis* court itself noted that the case did not require it to determine whether the FLSA preempted state substantive laws, but noted that it found preemption analysis merely "useful in assessing the opt-in/opt-out conflict." *Ellis*, 527 F. Supp. 2d at 449. Since the court ultimately ruled that it was not the state laws themselves but their method of enforcement that conflicted with congressional policy, the decision, although dressed in preemptive clothing, was at root based on the concept of inherent incompatibility, which we have already examined. The court also made the mistake, discussed earlier, of conflating the state laws' substantive provisions with their remedy through the opt-out procedure outlined in Rule 23, which is not subject to preemption. For these reasons, we disagree with the suggestion in *Ellis* that the FLSA preempts state laws that parallel its provisions.

affirm the District Court's judgment that the state laws at issue are not preempted.

## C.

The Rules Enabling Act grants the Supreme Court the power to create federal rules of practice and procedure with the restriction that these rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b). Rite Aid urges affirmance on the alternate ground that certification of a Rule 23 class action violates this prohibition because it would abridge the "substantive right" not to be sued in a representative action.

The *Ellis* court endorsed this position in the context of inherent incompatibility. It reasoned that Rule 23 is procedural because it merely provides "a mechanism whereby rights and duties of classes of plaintiffs and defendants may be enforced," but that the FLSA's opt-in provision creates "two principal substantive rights: the right of employers not to be sued in representative actions, and the right of employees not to have their rights litigated without their knowledge and express consent." *Ellis,* 527 F. Supp. 2d at 456 (footnote omitted). Certification under Rule 23 of state law claims identical to those in the FLSA opt-in action would "annihilate[] both of these intended results" because it would subject employers to representative actions and subject employees to the preclusive effects of a decision made without their individual agency or input. *Id.* at 456-57. In this context, therefore, Rule 23 would operate to "abridge" a substantive right, in violation of the Rules Enabling Act. *Id.*

33

*Ellis* is the minority view. Every other court to examine the issue has concluded that the Rules Enabling Act does not bar certification of an opt-out class action based on state employment-law claims paralleling the FLSA. *See, e.g., Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 675-76 (D. Md. 2011); *Espenscheid v. DirectSat USA, LLC,* 708 F. Supp. 2d 781, 793 (W.D. Wis. 2010); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 324 n.2 (S.D.N.Y. 2010); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164-65 (S.D.N.Y. 2008); *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 732-33 (M.D. Pa. 2007); *Neary v. Metro. Prop. & Cas. Ins. Co.*, 472 F. Supp. 2d 247, 250-51 (D. Conn. 2007). This skepticism is well founded. Assuming for the sake of argument the proposition that § 216(b) confers rights to employers "not to be sued in representative actions" and to employees "not to have their rights litigated without their consent," those rights would extend only to actions under the FLSA and are not abridged or modified by the certification of a state-employment law class under Rule 23. *Damassia*, 250 F.R.D. at 164-65. But even if we construed the provisions as in direct conflict, the "rights" conferred under § 216(b) are procedural under well-established precedent, since they relate to "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them," *Hanna v. Plumer*, 380 U.S. 460, 464 (1965), and therefore would be properly displaced by Rule 23, *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-6 (1987).

But whatever our view of the merits of the Rules Enabling Act argument, Rite Aid's claim cannot survive the

34

Supreme Court's recent decision in *Shady Grove Orthopedic Associates, P.A.* v. *Allstate Insurance Co.*, --- U.S. ---, 130 S. Ct. 1431 (2010) (plurality).  There, the Court determined that the certification of a class action under Rule 23 alleging violations of New York law did not violate the Rules Enabling Act, even though New York law prohibited the petitioner's suit from proceeding as a class action.  *Id.* at 1442-44.  The plurality rejected the respondent's argument that certification abridged the "substantive right . . . not to be subject to aggregated class-action liability" conferred under New York law and held that the "substantive nature of New York's law, or its substantive purpose, makes no difference." *Id.* at 1443-44 (omission in original) (emphasis removed).  "[I]t is not the substantive or procedural nature or purpose of the affected state law that matters," the Court continued, "but the substantive or procedural nature of the Federal Rule."  *Id.*

Concurring, Justice Stevens reached the same result by determining that the New York state law at issue was "a classically procedural calibration" attempting to balance competing goals of litigation similar to "filing fees or deadlines for briefs."  *Id.* at 1459 (Stevens, J., concurring in part and concurring in the judgment).  He reasoned that there is "a difference of degree between those examples and class certification, but not a difference of kind; the class vehicle may have a greater practical effect on who brings lawsuits than do low filing fees, but that does not transform it into a damages 'proscription' or 'limitation.'"  *Id.* (citations omitted).  Accordingly, Rule 23, not New York state law, properly governed the suit.  *Id.* at 1459-60.

*Shady Grove* leaves no room for the arguments advanced by Rite Aid, which parallel the contentions the Court rejected. Under the plurality's view, any supposed substantive purpose underlying § 216(b) is irrelevant, and we need only determine whether Rule 23 "really regulates procedure," which the Court has already concluded it does. Under the concurrence's view, the regulation of class relief under § 216(b) is procedural, and class certification does not implicate the Rules Enabling Act. Under either view, Rite Aid's argument fails. For these reasons, we reject Rite Aid's contention that permitting an opt-out class action alleging violations of the MWHL and the OMFWSA to proceed alongside a separately-filed FLSA opt-in action would violate the Rules Enabling Act.

## IV.

For the foregoing reasons, we will affirm the District Court's judgments with respect to preemption, reverse with respect to inherent incompatibility, and remand for proceedings consistent with this opinion.